**Duncan MILLER, Appellant,**

v.

**Stewart L. UDALL, Secretary of the Interior, Appellee.**

**No. 18732.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 3, 1965.

Decided June 30, 1965.

Mr. Charles F. Wheatley, Jr., Washington, D. C., with whom Mr. Robert L. McCarty, Washington, D. C., was on the brief, for appellant.

Mr. A. Donald Mileur, Attorney, Department of Justice, with whom Asst. Atty. Gen. Ramsey Clark, Messrs. Roger P. Marquis and Thomas L. McKevitt, Attorneys, Department of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, and FAHY and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

This appeal derives from the circumstances described in Robertson v. Udall, —— U.S.App.D.C. ——, 349 F.2d 195. As indicated in that opinion, appellant was the unsuccessful lease applicant whose protests eventually led to the disqualification of the successful offerors.

When the drawing was held on October 1, 1958, the federal official immediately in charge was the manager of the local land office. He announced orally to those present that he proposed to draw only three offers from all those submitted for each block, and to return the remaining offers forthwith, unopened. It was, curi-

ously enough, a Mr. John J. King who spoke up to point out that it would seem desirable to draw all the offers against the possibility that the first three might later be found wanting in some respect. The manager then said only that, in such event, the next valid offer filed would be adjudicated.

This last pronouncement was not lost upon appellant who, about three weeks later, filed new offers in respect of the five blocks involved in this appeal—blocks as to which it was, in the event, to be ultimately established that each of the offers drawn was a product of Mr. King's penchant for not leaving too much to chance. With the advent, four and one-half years later, of a final decision within the Department disqualifying all such offers, appellant suggested that it was now in order to honor his pending lease applications as entitled to priority under the statute. He objected to the Secretary's determination that the blocks in question should be put up anew for offers, and filed suit in the District Court. His appeal is from the District Court's award of summary judgment to the Secretary.

Appellant takes his stand upon this language in Section 17 of the Mineral Leasing Act, as it stood prior to that section's amendment in 1960, 41 Stat. 443 (1920), as amended, 30 U.S.C. § 226 (1958):

> [W]hen the lands to be leased are not within any known geological structure of a producing oil or gas field * * * the person first making application for the lease * * *

who is qualified to hold a lease under [this Act] * * * shall be entitled to a * * * lease of such lands without competitive bidding * * *.

He argues that the failure of the drawing did not close the lands to leasing, and that he is the *first* qualified applicant within the meaning of the statute. The Secretary, so it is said, is without authority to deny him a right which Congress has accorded him.

The Secretary, contrarily, argues that the drawing was not held in the manner required by the notice and the regulations;[1] and that, in the exercise of the authority and responsibility reposed in him by Congress to administer the public lands fairly and equitably,[2] he may properly direct, as a remedial measure to achieve this objective, that the lands be re-offered. It is conceded that there is no way of knowing who were the unsuccessful applicants the first time, inasmuch as the local manager kept no record of those whose offers were returned unopened. Thus the Secretary proposed to place no limitations upon those who may apply on the second go-round.

 We think the District Court was right in not interfering with the course of action which the Secretary proposes to follow. Although in drafting future notices and regulations, it may be well to be more explicit, we agree with the Secretary's contention that a fair reading of the applicable notice and regulation in this case implies that all the offers as to one block are to be drawn

---

1. The Secretary points out that the last sentence of the notice provided that the "priorities of *all* conflicting offers will be determined in accordance with the procedure outlined in the regulation 43 CFR 295.8. * * *" (emphasis supplied); and that the regulation so identified refers throughout to "all" applications in its prescription of the lottery procedure. In particular, the regulation says that "*all* such applications which conflict in whole or in part will be included in a drawing which * * * will fix the order in which the *applications* will be processed." 43 C.F.R. § 295.8(b) (1954). (Emphasis supplied.)

2. The wide measure of this authority has repeatedly been recognized. See Boesche v. Udall, 373 U.S. 472, 83 S.Ct. 1373, 10 L.Ed.2d 491 (1963); Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S. Ct. 379, 9 L.Ed.2d 350 (1963). Our own formulation may be found in McKenna v. Seaton, 104 U.S.App.D.C. 50, 54, 259 F. 2d 780, 784, cert. denied, 358 U.S. 835, 79 S.Ct. 57, 3 L.Ed.2d 71 (1958).

in order.[3] The Secretary could rationally regard it as unfair for those whose offers were returned to see the leases go to appellant under the circumstances here presented. Appellant's alertness was commendable, but we doubt that Congress intended for it to be rewarded by a prior right to the leases as against those who were equally unsuccessful with appellant in the first drawing.[4] At least we cannot say that the Secretary's choice in this regard is so at odds with the Congressional purposes as to justify judicial nullification.

Affirmed.

FAHY, Circuit Judge, did not participate in the decision of this case

3. Because the Bureau of Land Management in its disqualification decision directed the leases to be issued to appellant, it is now argued that this represented an interpretation, binding upon the Secretary, that the procedure followed at the drawing was in conformity with the notice. We find no such conscious interpretation; and, in any event, we think the Secretary was not, solely by reason of this Bureau decision, limited in his range of alternative methods of mitigating the damage done by his subordinates.

4. It is urged that we cannot be sure that these included any applicants not affiliated with King's venture. But this is a speculation in which the Secretary was not obliged to indulge. Whether he should affirmatively exclude from the new drawing all those whom he knows to have been associated with King in the first, is a policy question more appropriately to be resolved by him than by us.