**Evelyn R. ROBERTSON et al., Appellants,**

**v.**

**Stewart L. UDALL, Secretary of the Interior, Appellee.**

**No. 18781.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 3, 1965.

Decided June 30, 1965.

Mr. James S. Holmberg, Denver, Colo., of the bar of the Supreme Court of Colorado pro hac vice, by special leave of court, with whom Mr. Murdaugh Stuart Madden, Washington, D. C., was on the brief, for appellants. Mr. Phillip D. Bostwick, San Francisco, Cal., also entered an appearance for appellants.

Mr. A. Donald Mileur, Attorney, Department of Justice, with whom Asst. Atty. Gen. Ramsey Clark, Messrs. Roger P. Marquis and Thomas L. McKevitt, At-

torneys, Department of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, and FAHY and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

The District Court granted appellee's motion for summary judgment in this action, which we think must be taken to be a suit to review, on the basis of the administrative record, a decision by the Secretary of the Interior to reject certain lease offers as not in compliance with the applicable regulations. The Secretary's reading of these regulations was, in our view, a warrantable one; and there is no claim that the regulations, as so read, are beyond the Secretary's powers. We, therefore, have only to consider appellants' claim that the departmental proceedings were inadequate in terms of procedural due process. We do not find them so.

I

The Federal Register, on July 29, 1958, gave notice that some 4 million acres of land in Alaska, in blocks of approximately 2,500 acres each, were being made available for non-competitive oil and gas leasing under the Mineral Leasing Act. 23 Fed.Reg. 5700–01. It was stated that the leasing would be subject to the terms recited in the notice, and also to the existing regulations then set out in 43 C.F.R., Part 192. The former included a provision that "Each offeror may file only one offer for each separate leasing block." The latter contained a requirement, appearing in the margin,[1] with respect to

---

1. 43 C.F.R. § 192.42(e) (4) (1954) provided:

If the offer is signed by an attorney in fact or agent, or if any attorney in fact or agent has been authorized to act on behalf of the offeror with respect to the offer or lease, separate statements over the signatures of the attorney in fact or agent and the offeror stating whether or not there is any agreement or understanding between them, or with any other person, either verbal or written by which the attorney in fact or agent or such other person has received, or is to receive, any interest in the lease when issued, including royalty interest or interest in an operating agreement under the lease giving full details of the agreement or understanding, if it is a verbal one; the statement must be accompanied by a copy of any such written agreement or understanding; and if such an agreement or understanding exists, the statement of the attorney in fact or agent should set forth the citizenship of the attorney in fact or the agent or other person and whether his direct and indirect interests in oil and gas leases, applications, and offers therefor ex-

the making of offers by agents. The notice specified that all offers received during the first 60 days would be deemed to have been filed at the same time, and that precedence between offers for the same block would be determined by lot.

The drawing took place on October 1, 1958. Appellants were in luck to the extent of one first prize, and three second places.[2] Thereafter one Miller filed conflicting offers on these four blocks, and protested to the authorities that collusion must be extant because the first three names drawn on these four blocks (and one other) carried the same address, i. e., Post Office Box 1161, Dallas, Texas.[3] Although the local land office dismissed the protest, Miller's representations to the Director of Land Management resulted in an extensive investigation which revealed these circumstances: A Mr. John J. King, of Denver, Colorado, conceived the happy inspiration of getting a large number of people to file offers for the Alaska leases. He took his idea to an organization known as Transwestern Investment Company, Post Office Box 1161, Dallas, Texas. This firm interested 59 persons in filing individual applications on 39 blocks. A form of contract was drafted for use between each such individual and Transwestern, which provided, among other things, for the furnishing by Transwestern (for whom the designation of "agent" was used throughout) of the geological services required to select the blocks in question, the completion by Transwestern of the offering forms signed by the "Client," the filing thereof by Transwestern together with the Client's check for $1300

in respect of each block, the assignment in blank by the Client of any lease secured and the delivery of such assignment to Transwestern with power in the latter to sell such lease and to divide 50-50 all profits remaining after reimbursement to the Client of his $1300. The upshot of all this was that King eventually presented himself in Alaska with over 2,000 offers to file, thereby shortening the odds appreciably in the impending lottery. The Bureau of Land Management concluded that this constituted collusion and disqualified appellants' offers. As they were privileged to do, appellants appealed to the Secretary. This appeal eventuated in a decision that, although the Bureau justifiably disqualified appellants because of the collusive nature of their venture, an anterior disqualification existed by reason of the failure of appellants to have accompanied their offers with the agency statements required by the regulations. It is this decision by the Secretary[4] which appellants brought to the District Court for review.

## II

The merits of the Secretary's action do not, in our view, call for much comment. Like him, we think that there was a patent failure to comply with the requirements relating to the disclosure of an agency interest and relationship; and that this failure rendered appellants' lease offers ineffective from the first. Had the facts been known at the time, the offers could—and presumably would— have been rejected at the moment of submission for filing. That their defects— which were not apparent on their face

---

ceeds 46,080 chargeable acres in the same State, or exceeds 100,000 acres in the Territory of Alaska. * * *

2. The local land office manager supervising the election unaccountably decided to draw only one winner and two alternates from the offers submitted in respect of each block, and to return immediately all of the remaining unopened offers.

3. See Miller v. Udall, —— U.S.App.D.C. ——, 349 F.2d 193. Miller was an unsuccessful applicant who happened to be present at the drawing and who filed new

offers some three weeks later on five blocks as to which he claimed collusion on the part of the three persons drawn in each instance. His suit challenged the Secretary's eventual determination that the blocks should be re-offered rather than leased to him.

4. The references throughout are to the Secretary because the decision was his in legal effect. The actual decision is signed by the Solicitor of the Department, to whom the Secertary has made a delegation not questioned here.

—necessarily became known only after subsequent investigation does not make them any less irregular, nor does it estop appellee in any way from asserting that irregularity.

■ Appellants contend that there is some evidence of a departmental practice in the past to apply the agency regulation only in those cases where the lease offer purports on its face to be signed by an agent *and* where the agent is shown to have made the selection of the lands. In this latter respect, it is claimed that there has been no opportunity to show that appellants did in fact select their own lands. But the regulation does not, in our reading of it, say or fairly imply that these conditions attach; and, whatever may have been their recognition within the Department on other occasions, we do not think that the Secretary was disabled from applying the regulation in this instance in what clearly appears to have been not only its letter but its spirit. Our duty to defer to the Secretary's interpretation of his own regulations, so long as that interpretation is not plainly beyond the bounds of reason or authority, is well-defined.[5] We observe it now.

### III

■ In turning to the procedural issue, we remark that the question before us is not whether there were disputed and material questions of fact to be tried in the District Court, thereby rendering summary judgment inappropriate. It is the administrative record, upon the basis of which the Secretary acted, which is to be looked to in this proceeding as the measure of the propriety of his action. And we are now addressing ourselves to the argument that the course of the administrative proceedings was such as to deprive appellants of a fair opportunity to be heard.

■ The argument seems to us to lack the substance which would impel us to reverse the District Court. When the Director of the Bureau of Land Management decided to investigate the matter, he sent a representative to interview the various persons involved. Those interviews were recorded and transcripts are included in the record. When an appeal was taken to the Secretary, additional evidence was submitted by appellants in support of it, which evidence itself included two separate signed copies of the form of agreement prepared by Transwestern for use in this venture. We have examined this record in detail, and we believe that it inescapably reveals the essential nature of this project to be such as to justify the Secretary's disposition. It is true that counsel has now tried to develop some issues of fact, such as whether some of the agreements were finally executed, whether all blanks in the lease applications were filled in before or after leaving the appellants, and what the understanding of certain of the appellants was as to the effect of the agreements. But these strike us as largely lacking in materiality insofar as the propriety of the disqualification is concerned. In our view, appellants failed to convince the Secretary, not because they were denied a reasonable opportunity to do so but because the primary facts, brought out by themselves as well as by the Government and which are not essentially in dispute, were too stubborn.

The judgment of the District Court is

Affirmed.

FAHY, Circuit Judge, did not participate in the decision of this case.

5. See Thor-Westcliffe Development, Inc. v. Udall, 114 U.S.App.D.C. 252, 314 F.2d 257, cert. denied. 373 U.S. 951, 83 S.Ct. 1681, 10 L.Ed.2d 706 (1963); California Co. v. Udall, 111 U.S.App.D.C. 262, 296 F.2d 384 (1961); Wright v. Paine, 110 U.S.App.D.C. 100, 289 F.2d 766 (1961). The principle as applied to administrative regulations has been periodically reaffirmed by the Supreme Court. See, e.g., Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).