John S. RUNNELLS and Stewart Capital Corporation, a Delaware Corporation, Plaintiffs,

v.

Cecil ANDRUS, Secretary of the Interior et al., Defendants.

No. C 77–0268.

United States District Court, D. Utah, C. D.

Feb. 19, 1980.

H. Byron Mock and Joel R. Dangerfield, Mock, Shearer & Carling, Salt Lake City, Utah, Craig R. Carver, Denver, Colo., James W. McDade, McDade & Lee, Washington, D. C., for plaintiffs.

Wallace Boyack, Asst. U. S. Atty., Salt Lake City, Utah, Gerald S. Fish, Atty. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION and ORDER

JENKINS, District Judge.

This is an action seeking declaratory and injunctive relief against the Secretary of the Interior. Jurisdiction is alleged under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (mandamus) and 28 U.S.C. § 2201 (declaratory relief). Subject matter jurisdiction is not disputed, and the court finds that it has jurisdiction. Venue is appropriate in this District under 28 U.S.C. § 1391(e) and also is not disputed. The action is presently before the court on cross-motions for summary judgment. These motions were argued to the court on July 2, 1979, on undisputed facts. Written memoranda and other materials have been received by the court, and the matter is ripe for decision. Plaintiffs have fully exhausted their administrative remedies.

The present dispute arose when a lease offer was submitted on behalf of plaintiff Runnells for federal land in Utah made available for noncompetitive oil and gas leasing under the simultaneous filing program. Based on 30 U.S.C. § 226, the first qualified offeror has what is called a "statutory preference right" to be awarded the lease. Priority between simultaneously filed offers is determined by a public drawing, and the first qualified offer drawn establishes entitlement to the lease. *See*, 43 C.F.R. Part 3110.

Runnells' lease offer was submitted by Stewart Capital Corp., who has joined this action as a plaintiff by Amended Complaint. Stewart Capital is a "filing service" which performs various services for clients who are interested in applying for oil and gas leases. Stewart Capital filed Runnells' lease offer in the form of a Drawing Entry Card (DEC) on which Runnells' signature was affixed by Stewart Capital with a rubber stamp. Runnells' DEC was drawn first in the public drawing for simultaneous offers.

An offer not drawn was that of D. E. Pack, who contested the award of the lease to Runnells, contending among other things that the stamping of Runnells' signature on the DEC was inappropriate and should render the DEC void. The Utah State Office of the Bureau of Land Management (BLM) denied the contest after receiving an affidavit from Runnells that the stamped signature was affixed with his consent and that he was the sole party in interest on the lease. Runnells also filed a copy of the service agreement between himself and Stewart Capital.

The BLM decision was appealed to the Interior Board of Land Appeals (IBLA), which reversed the BLM in *D. E. Pack*, 30 IBLA 166 (May 19, 1977). The IBLA determined that although the stamped signature was valid, 43 C.F.R. § 3102.6–1(a)(2) required that where the lease offer was signed by the offeror's agent, the offer must be accompanied by "agency statements" filed separately by both the offeror and the agent, stating whether the agent was to receive an interest in the lease. The IBLA ruled that Stewart Capital "signed" the DEC as Runnells' agent, that Stewart Capital did not file an "agency statement", that therefore the lease offer was not "qualified" and that since the lease offer was void for that reason, there was no need to determine whether Runnells' affidavit met the requirements for a timely "agency statement".

On further administrative review, the Secretary of the Interior directed the IBLA

to reconsider its decision. The IBLA did so in *D. E. Pack*, 38 IBLA 23 (Nov. 9, 1978), but reached the same result. The dissenting opinion of the IBLA agreed that an "agency statement" from Stewart Capital was required but would have applied the decision prospectively only, based on Stewart Capital's good faith and on pre-decision uncertainty about whether "agency statements" were required when the offeror's signature is stamped by a filing service.

Runnells and Stewart Capital seek review of the IBLA decision under the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706. They seek an Order of this court reversing the IBLA decisions, declaring Runnells' DEC (No. U–34366) to be the first qualified offer for a lease on the parcel of land in question (Parcel No. UT 1408), and mandating the issuance of a lease to Runnells on Parcel No. UT 1408. The issues to be resolved are:

(1) Whether the IBLA interpretation of 43 C.F.R. § 3102.6–1(a)(2) as applied to the Runnells' lease offer was arbitrary, capricious or an abuse of discretion;

(2) Whether the policy regarding application of 43 C.F.R. § 3102.6–1(a)(2) as announced by the IBLA in *D. E. Pack* was required to be adopted through the "rulemaking" procedures of the Administrative Procedures Act, 5 U.S.C. § 553, rather than by "adjudication";

(3) Whether it was appropriate for the IBLA to apply the policy announced in *D. E. Pack* retroactively to bar Runnells' lease offer, rather than prospectively only, in light of the principles announced in *Retail Wholesale and Department Store Union v. NLRB*, 151 U.S.App.D.C. 209, 218–219, 466 F.2d 380, 389–390 (D.C. Cir. 1972).

As to the first issue, plaintiffs concede that the Secretary had the authority to promulgate the regulation in dispute, and that the IBLA had the authority to interpret that regulation. 43 C.F.R. § 3102.6–1(a)(2) states:

If the offer is signed by an attorney in fact or agent, it shall be accompanied by separate statements over the signatures of the attorney-in-fact or agent and the offeror stating whether or not there is any agreement or understanding between them or with any other person, either oral or written, by which the attorney in fact or agent or such other person has received or is to receive any interest in the lease when issued, including royalty interest or interest in any operating agreement under the lease, giving full details of the agreement or understanding if it is a verbal one. The statement must be accompanied by a copy of any such written agreement or understanding. If such an agreement or understanding exists, the statement of the attorney-in-fact or agent should set forth the citizenship of the attorney-in-fact or agent or other person and whether his direct and indirect interests in oil and gas leases, applications, and offers including options for such leases or interests therein exceed 246.080 (sic) acres in any one State, of which no more than 200,000 acres may be held under option, or exceeds the permissible acreage in Alaska as set forth in § 3101.1–5. The statement by the principal (offeror) may be filed within 15 days after the filing of the offer. This requirement does not apply in cases in which the attorney-in-fact or agent is a member of an unincorporated association (including a partnership), or is an officer of a corporation and has an interest in the offer or the lease to be issued solely by reason of the fact that he is a member of the association or a stockholder in the corporation.

[1, 2] It is beyond dispute that an administrative agency's interpretation of its own regulations should be given some deference by a reviewing court. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). The court finds that the IBLA interpretation requiring the filing of "agency statements" in this factual situation is reasonable and within the agency's discretion. "Noncompetitive" oil and gas lease offers are actually highly competitive and the possibility of collusive filings must be guarded against. The government and the public are entitled to know who has what interest

in oil and gas leases on public lands. Some filing services have abused the filing system. It is within the Interior Department's area of expertise and discretion to develop and enforce a system to prevent filing services from using a rubber stamp to cloud their relationships with principal offerors.

▆▆▆ Plaintiffs raise the second issue by arguing that even if the IBLA interpretation of the regulation was reasonable, it constituted a change in policy that should have been formulated through notice and comment rulemaking procedures rather than through adjudication. However the decision whether to create policy through rulemaking rather than adjudication is normally a discretionary decision. *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). The court finds no abuse of this discretion here.

Professor Davis, in his *Administrative Law Treatise*, Volume 2 at p. 119 (2d ed. 1979), observes that rulemaking under the Administrative Procedures Act is "superior" to adjudication as a device for making policy, for two reasons: ". . . (1) It is normally prospective, whereas adjudication is normally retroactive, and (2) rulemaking procedure may allow participation of nonparties who may be affected . . .". Although there may be situations where these reasons become so compelling that it would be an abuse of discretion not to conduct rulemaking, *D. E. Pack* is not one of those circumstances. Although there are compelling reasons why the *D. E. Pack* decision should have been issued prospectively, and these will be discussed below, there is little justification for requiring the Interior Department to solicit public comment before interpreting 43 C.F.R. § 3102.6–1(a)(2) to require that "agency statements" be filed when a filing service acts on behalf of an offeror in stamping the offeror's signature on a lease offer.

As noted above, this is a reasonable interpretation of the regulation's language and purposes. But for its retroactive impact, the decision requiring principal offerors and their filing service agent to file "agency statements" in these circumstances would not adversely affect or unduly burden bona fide offerors and filing services. Written laws are almost always subject to interpretation, some of which must occur through adjudication. Under 5 U.S.C. § 553, agencies are not required to solicit public comment before issuing "interpretative" rules of this kind. It is doubtful that either Runnells or Stewart would have objected, or would have had good cause to object, if *D. E. Pack* had been decided prospectively.

It is this third issue regarding the retroactive impact of *D. E. Pack* that most concerns both the plaintiffs and the court. As the Supreme Court recognized in *S.E.C. v. Chenery Corp.*, *supra*, 332 U.S. at 203, 67 S.Ct. at 1581: "Every case of first impression has a retroactive effect, whether the new principle is announced by a court or by an administrative agency." The court then went on to prescribe a balancing test for determining when retroactive effect should be permitted: "But such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law. [citation omitted]."

The *Chenery* balancing test was applied in *Retail Wholesale and Department Store Union v. NLRB*, *supra*, 151 U.S.App.D.C. at 219, 219, 466 F.2d at 390. There, the court first noted what scope and standards of judicial review applied to retroactive administrative orders: "Which side of this balance preponderates is in each case a question of law, resolvable by reviewing courts with no overriding obligation of deference to the agency decision, [citation omitted]; and courts have not infrequently declined to enforce administrative orders when in their view the inequity of retroactive application has not been counterbalanced by sufficiently significant statutory interests. [citations omitted]."

The court then listed five elements to be considered in balancing the ill effects of retroactive decisions with the statutory purposes sought to be protected:

(1) whether the particular case is one of first impression,

(2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law,

(3) the extent to which the party against whom the new rule is applied relied on the former rule,

(4) the degree of the burden which a retroactive order imposes on a party, and

(5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

In applying these five elements of the balancing test to *D. E. Pack*, the court finds that the balance tilts heavily against retroactivity. At the time the Runnells lease offer was filed in August, 1976 there were no IBLA decisions on whether "agency statements" were required based on a stamped signature, so that *D. E. Pack* was effectively a case of first impression for Runnells. However *D. E. Pack* did depart from a "well-established practice" of the BLM. In 1971, *Mary I. Arata*, 4 IBLA 201, 78 I.D. 397 (1971) held that a stamped signature was valid, so long as the offeror intended that it serve as his signature. Prior to then facsimile signatures were not permitted. From 1971 until after August, 1976, the BLM did not require "agency statements" to accompany lease offers stamped with facsimile signatures. Instead, if a facsimile signature appeared on a DEC, the BLM contacted the offeror and obtained his affidavit as to whether he intended the facsimile to serve as his signature and whether he was the sole party in interest. This practice was followed by the BLM in Runnells' case. Stewart Capital relied on this practice in submitting the Runnells' lease offer. A letter dated June 23, 1972 from the Acting Director of the BLM Division of Upland Minerals, responding to Stewart Capital's letter dated February 23, 1972, confirmed that Stewart Capital's facsimile signature procedure was acceptable.

In reconsidering *D. E. Pack*, the IBLA rejected Runnells' request for prospective application by concluding that his interpretation of the disputed regulation was not only unreasonable but also "bizarre". However this "bizarre" interpretation was the one followed by the BLM since 1971. On November 23, 1977, between the first and second decisions in *D. E. Pack*, the BLM issued Instruction Memorandum No. 77–581, formally adopting the practice of permitting after the fact affidavits by offerors in lieu of "agency statements" filed contemporaneously with signature stamped DEC's by both offeror and agent. Although this Instruction Memorandum was issued after Runnells' offer, and thus was not relied upon by Runnells, it reflected an administrative practice that had been in effect for some six years, upon which Runnells or Stewart Capital did rely. This court's conclusion that the IBLA's interpretation of 43 C.F.R. § 3102.6–1(a)(2) was "reasonable" does not mean that the prior interpretation by the BLM was "unreasonable". The regulation was subject to two "reasonable" interpretations. As the IBLA acknowledged in reconsidering *D. E. Pack*, a lease offer may not be rejected as not "qualified" where the regulation establishing "qualifications" is ambiguous. It is this very dispute between the BLM and the IBLA that most clearly evidences the ambiguity of the regulation in question, as well as the "reasonableness" of the reliance on prior BLM practice.

The burden of the retroactive impact of *D. E. Pack* on both Runnells and Stewart is so severe that it constitutes a penalty for failing to anticipate that the IBLA would overrule prior BLM practice. Runnells has no opportunity to cure the defect and thus preserve his "statutory preference right". Stewart Capital's situation is even worse since it has 84 lease offers pending on behalf of offeror-clients, all subject to *D. E. Pack* because of facsimile signature without "agency statements". As the court noted in *NLRB v. Majestic Weaving Co.*, 355 F.2d 854, 860 (2d Cir. 1966):

Although courts have not generally balked at allowing administrative agencies to apply a rule newly fashioned in an

adjudicative proceeding to past conduct, a decision branding as "unfair" conduct stamped "fair" at the time a party acted, raises judicial hackles . . . And the hackles bristle still more when a . . penalty is assessed for action that might well have been avoided if the agency's changed disposition had been earlier made known, or might even have been taken in express reliance on the standard previously established. [citations omitted]

The final inquiry is whether there is some compelling statutory interest that outweighs the adverse effects of retroactivity. Defendants cite *Robertson v. Udall*, 121 U.S.App.D.C. 218, 349 F.2d 195 (D.C. Cir. 1965) and *Enfield v. Kleppe*, 566 F.2d 1139 (10th Cir. 1977) as examples of cases where reliance on past administrative practice has not precluded administrative decisions contrary to past practice. However in *Robertson*, there was much more than technical non-compliance with lease offer regulations; there was an attempt to rig the public drawing for simultaneous lease offers with collusive filings. Here, there is no allegation of bad faith in connection with the Runnells' lease offer and no contest to the allegations in Runnells' affidavit that the facsimile signature was affixed with his consent and that he was the sole party in interest. The information supplied by the Runnells' affidavit is substantially the same information as that required in "agency statements" under the regulation, and Runnells also gave the BLM a copy of his agreement with Stewart Capital.

The statutory interests protected in *Enfield* are also distinguishable. There, the administrative practice had been to grant unlimited two year extensions to the life of an oil and gas lease upon which actual drilling operations had been commenced, regardless of whether oil or gas were being produced. This was in direct conflict with the express terms of the *statute* which provided that only one two year extension was permitted unless the lease was actually producing. *D. E. Pack* involves no direct conflict with express statutory language, and, as noted above, the disputed regulation is subject to more than one interpretation.

In *D. E. Pack*, the IBLA noted statutory interests in treating offerors "uniformly" and in awarding leases only to "qualified" offerors. However uniform treatment is not promoted where offerors who file after the *D. E. Pack* decision have the benefit of greater knowledge about what the filing regulations require and offerors who filed prior to that time are penalized for not having that knowledge. Also, the only thing that rendered Runnells not "qualified" as an offeror was the *D. E. Pack* decision itself.

One effect of applying *D. E. Pack* and related cases retroactively may be to cloud title to *issued* leases, which would be directly *contrary* to statutory purposes. In *Geosearch, Inc.*, 40 IBLA 397 (May 14, 1979) and *Geosearch, Inc.* 41 IBLA 291 (June 28, 1979), the IBLA indicated it would consider protests to the qualifications of offerors not only after leases had been issued but also after these issued leases were assigned to third parties. Leases have been issued on some 416 offers filed by Stewart Capital on behalf of clients where facsimile signatures have been affixed and "agency statements" have not been submitted. Geosearch, Inc. purchased the interests of the offerors drawn second in the public drawings in the above two cases for the purpose of bringing these contests, and has also done so on at least one of the above 416 leases issued to Stewart Capital's clients. However, in *Oil Shale Corp. v. Morton*, 370 F.Supp. 108, 127 (D.Colo.1973) the Secretary of the Interior was estopped from reversing a longstanding administrative practice because the court sought: "[to] lay to rest the emerging specter of chaotic, piecemeal title challenge[s] . . . and to prevent the government from capriciously dealing with its citizens . . . ."

■ The Interior Department has become concerned enough about the use of facsimile signatures that it has issued proposed regulations that would ban their use. 44 Fed.Reg. 56176. (Sept. 28, 1979). However this does not mean that it can penalize offerors who use them in the interim. The IBLA had the authority to issue *D. E. Pack*

prospectively. See *Safarik v. Udall*, 113 U.S.App.D.C. 68, 304 F.2d 944 (D.C. Cir. 1962) *cert. den.* 371 U.S. 901. Because the prejudice to plaintiffs substantially outweighs the statutory interest and purposes sought to be protected by defendants, the court finds that the IBLA acted contrary to law in refusing to apply *D. E. Pack* prospectively only.

Therefore, in light of the foregoing, it is hereby ORDERED:

1. The decision of the IBLA in *D. E. Pack* is Reversed, but only insofar as it applies retroactively;

2. The Secretary of the Interior and his designees are Enjoined from applying *D. E. Pack* to lease offers filed before November 9, 1978, the date of the final IBLA decision in that case;

3. Assuming there are no legal impediments to the issuance of a lease, other than the absence of "agency statements", the Secretary of the Interior and his designees are ORDERED to issue a noncompetitive oil and gas lease for Parcel No. UT 1408 to John S. Runnells, the first qualified offeror based on lease offer No. U–34366.