**GEOSEARCH, INC., Plaintiff,**

v.

**Cecil D. ANDRUS, Secretary of the Interior et al., Defendants.**

**Nos. C80–205K, C80–258K, C80–259K and C80–292K.**

United States District Court, D. Wyoming.

Feb. 20, 1981.

Melvin E. Leslie, Salt Lake City, Utah, and James L. Huemoeller, Cheyenne, Wyo., for plaintiff.

Kathryn A. Oberly, U. S. Dept. of Justice, Washington, D. C., and Toshirc Suyematsu, Asst. U. S. Atty., for the Dist. of Wyoming, Cheyenne, Wyo., for Cecil D. Andrus, Secretary of the Interior.

Maxwell T. Lieurance, State Director, Bureau of Land Management, Dept. of the Interior, Glenna M. Lane, Chief, Oil and Gas Section, Wyoming State Bureau of Land Management, Dept. of the Interior, William J. Thomson, Cheyenne, Wyo., for Warren R. Haas and George B. Peays.

Hugh C. Garner, Salt Lake City, Utah, for Banner Oil & Gas Ltd.

Houston G. Williams, Casper, Wyo., and B. Lee Ware, Jr., Houston, Tex., for Michigan Wisconsin Pipe Line Co.

Steve F. Freudenthal, Cheyenne, Wyo., for Sundance Oil Co.

John A. Hutchings, Denver, Colo., and James H. Barrett, Cheyenne, Wyo., for R. K. Cramer, Gemini Corp.

William E. Murane and John F. Shepherd, Denver, Colo., for Barbara Davis and Davis Oil Co.

Robert C. Hawley and Gretchen A. Vanderwerf, Denver, Colo., for Dome Petroleum Corp.

Robert C. Grable, Fort Worth, Tex., for Bass Enterprises Production Co.

Brent R. Kunz, Cheyenne, Wyo., for Bonnie J. Brown and Maurice W. Brown.

John W. Madden, III, Denver, Colo., for Johnson-Mizel Oil Co. and Eva Hecht.

Jerome F. Statkus, Cheyenne, Wyo., for Robert Cieslik and Resource Service Co., Inc.

Morris R. Massey and Claude W. Martin, Casper, Wyo., for J. S. Harrell, General American Oil Co. of Tex., Charles E. Johnson, Elias F. Galeotos, A. G. Andrikopoulos, Thomas Wittenwyler, Rex H. Richardson, Inexco Oil Co., Harrell & Bradshaw, Louisiana Land and Exploration Corp., E. C. Markley and A. Lansdale.

Marilyn S. Kite, Laramie, Wyo., for Banner Oil & Gas Ltd., Barbara Davis and Davis Oil Co. and Bass Enterprises Production Co.

## MEMORANDUM OPINION.

KERR, Senior District Judge.

These four cases arise under the Mineral Leasing Act of 1920, as amended, 41 Stat. 437, 30 U.S.C. §§ 181–226. There are common issues of fact and law in all four cases and this Court ordered on November 19, 1980 that the four cases be consolidated.

The plaintiff in all four cases is Geosearch, Inc. (Geosearch). Geosearch is an organization which sends standardized form letters to second drawees under the simultaneous oil and gas leasing system, offering to search for any possible defects in the offer of the first drawee. Should a potential defect be discovered, Geosearch protests the issuance of the lease. If the protest is successful and the lease is issued to the second drawee, Geosearch retains a percentage in the lease.

In these cases, Geosearch is seeking this Court's review of seven separate decisions of the Interior Board of Land Appeals (IBLA). Fifteen leases issued under the

simultaneous oil and gas leasing system as it existed prior to June 16, 1980 are involved in the seven IBLA decisions.

According to Geosearch, jurisdiction is based on federal question, 28 U.S.C. § 1331(a); the Federal Mandamus Statute, 28 U.S.C. § 1361, the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706; the Mineral Leasing Act, 30 U.S.C. § 181 et seq.; and the Fifth Amendment to the United States Constitution. Review by this Court is predicated on the Administrative Procedure Act. These consolidated actions came on regularly for hearing before the Court upon twenty three motions to dismiss filed by various defendants.

■ The Mineral Leasing Act of 1920, as amended, and its implementing regulations set up a system to lease lands subject to disposition under the Act. The purpose of the Act is to promote the orderly development of oil and gas deposits in publicly owned lands of the United States through private enterprise. *Harvey v. Udall*, 384 F.2d 883 (10th Cir. 1967).

■ Section 17(a) of the Act, 30 U.S.C. § 226(a) succinctly states that "All lands subject to disposition under this chapter which are known or believed to contain oil or gas deposits may be leased by the Secretary." The leasing of a tract of land is left to the discretion of the Secretary. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616, reh. den., 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283.

Two different procedures are followed when leasing the lands. The procedure chosen is dependent upon whether or not the lease covers lands within a known geological structure. Section 17(b) of the Act, 30 U.S.C. § 226(b) makes it clear that if the lease is located within "a known geological structure of a producing oil and gas field", the lease should be granted to the "highest, responsible, qualified bidder by competitive bidding."

In the event that the lease covers lands that are not currently known to be within a known geological structure, Section 17(c) of the Act, 30 U.S.C. § 226(c), provides that the Secretary shall grant the lease to "the person first making application for the lease who is qualified to hold a lease under this chapter." That person "shall be entitled to a lease of such lands without competitive bidding." These leases are called "noncompetitive leases."

Pursuant to Section 32, 30 U.S.C. § 189, the Secretary is authorized "to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this chapter..." Many rules and regulations have been promulgated in accordance with this directive, some of which are relevant to the cases currently being considered by this Court.

In an attempt to eliminate chaos and establish uniformity, the Secretary promulgated regulations establishing a simultaneous filing and a public drawing in the event of multiple applications for leases. Initially a notice is published designating lands available for lease by the Bureau of Land Management (BLM). The notice invites the filing of simultaneous oil and gas offers pursuant to the noncompetitive leasing provisions of the Act, 30 U.S.C. § 226(c) and 43 C.F.R. § 3110, et seq. A public drawing is held and the lease must issue to the first drawee, providing the requisite qualifications as set down by the Act and rules and regulations promulgated thereunder have been met. *Ballard E. Spencer Trust, Inc. v. Morton*, 544 F.2d 1067 (10th Cir. 1967).

An offer to lease is submitted on a BLM form known as a "Simultaneous Oil and Gas Entry Card" or a "drawing entry card" (DEC).

On the third Monday of each month the State BLM offices post a list of lands available for leasing. DEC's are submitted by parties interested in the leases. All DEC's are treated as if they were simultaneously filed. A drawing is held and three DEC's are drawn. If the first card drawn was filed by a qualified applicant, that applicant receives the lease upon payment of the first

year's rental. If the rules and regulations were violated in some manner, the first drawee would not receive the lease. The second and third drawees' offers would be considered in the same way. If no qualified applicants were found among the three drawees, the lands under consideration would again be put up for lease in the next drawing. See, 43 C.F.R. § 3112.1–2; 43 C.F.R. § 3112.2–1; 43 C.F.R. § 3112.4–1; 43 C.F.R. § 3112.5–1. Unsuccessful drawees are notified by the return of their respective DEC's 43 C.F.R. § 3112.2–1(4). The Court notes in passing, however, that although the only notice to second and third drawees described in the regulations is by the return of the DEC's, a public list of the lease drawees is typed up and placed on BLM bulletin boards for public inspection. Furthermore, a mailing list is kept by the BLM office and copies of the list of drawees are sent to all those on the mailing list. A phone call and an agreement to pay the small charge for the copy of the list is all that is required to get one's name on the mailing list.

The appeal procedure for unsuccessful drawees is outlined by 43 C.F.R. § 4.411. If the unsuccessful drawee desires to appeal the adverse decision, a notice of appeal must be filed in the office of the officer who made the decision. The notice must be filed within thirty (30) days after the party taking the appeal is served with the decision from which the appeal is taken. The appeal mechanism as it relates to the simultaneous oil and gas leasing system is very clear. The 30 day appeal period begins to run when the second and third drawees are notified by the return of their DEC's that their offers have been rejected. If the unsuccessful drawees do not appeal within thirty (30) days, the rejection of the offer is final.

Although the regulations for the simultaneous leasing system were revised and became effective on June 16, 1980, the revision has no effect on the leases which are the subject matter of these four cases. The above-described system was in effect at the time of the issuance of the leases in the four cases currently under consideration.

### Civil No. C80–205K

Geosearch instituted civil suit C80–205K as an appeal from a decision of the IBLA affirming the issuance of lease W–63057 to Warren R. Haas (Haas). Haas is an individual residing in New York and was the first drawee for lease W–63057. Lease W–63057 was issued effective May 1, 1978 to Haas. On June 23, 1978, Haas assigned the lease to Banner Oil and Gas, Ltd. (Banner), reserving an overriding royalty of 6.25%. The assignment was approved by the State BLM Office effective August 1, 1978. Geosearch acquired by letter agreement the rights of the second drawee, Jane E. Snyder on June 19, 1979. On October 5, 1979, some 18 months after the issuance of the lease, Geosearch filed a protest with the State BLM Office regarding the issuance of the lease to Haas. Geosearch claimed that Haas' DEC was filed for him by an agent, Federal Energy Corporation and, that in so doing, the filing violated some of the regulations.

The State BLM Office issued a decision dismissing Geosearch's case on December 11, 1979. An appeal was filed on January 14, 1980. The IBLA issued its opinion affirming the State BLM decision on April 11, 1980.

The IBLA based its decision on the fact that Banner is a bona fide purchaser pursuant to 43 C.F.R. 3102.1–2. That regulation provides that "the right to cancel or forfeit for violation of any of the provisions of this Act shall not apply so as to affect adversely the title or interest of a bona fide purchaser of any lease . . ."

The IBLA found that Banner was indeed a bona fide purchaser and that there was no evidence to the contrary before it. The decision stated, in pertinent part:

> The disposition of this appeal does not turn on the procedural elements of a contest or protest but on the consequences of the issuance of the lease to Haas and the assignment to Banner. If Banner is a bona fide purchaser, then appellant, succeeding to the interest of the second

drawee, could not obtain the lease, even if Haas' offer were defective. *Geosearch, Inc.*, 41 IBLA 291 (1979); *Robert G. Race*, 37 IBLA 162 (1978) . . .

. . . As we observed in *Race, supra*, this provision prevents the Department from cancelling a lease where it has been assigned to a bona fide purchaser, even though the original lease offer was clearly defective. *Southwest [Southwestern] Petroleum Corp. v. Udall*, 361 F.2d 650, 655–6 (10th Cir. 1966). There is nothing in the record before us to indicate that Banner was not a bona fide purchaser. Banner's affidavit attests to its good faith in negotiating the purchase of the lease from Haas. Appellant, who has the burden of persuasion, has cited only legal authorities on the principle of good faith purchase. He has presented no prima facie evidence to the contrary. The affidavit of appellants' counsel does not afford any facts to challenge successfully appellee's claimed status as a bona fide purchaser.

▇ The scope of review by this Court is limited to the administrative record. 5 U.S.C. § 706(2)(A). The sole issue for the Court's determination is whether or not the federal agency's actions were arbitrary, capricious, or an abuse of discretion. *Ballard E. Spencer Trust, Inc. v. Morton*, 544 F.2d 1067 (10th Cir. 1976).

The definition of a bona fide purchaser was discussed by the Tenth Circuit Court of Appeals in *Southwestern Petroleum Corp. v. Udall*, 361 F.2d 650 (10th Cir. 1966). The court stated that a bona fide purchaser "must have acquired his interest in good faith, for valuable consideration, and without notice of departmental regulations." See also, *Winkler v. Andrus*, 494 F.Supp. 946, D.C.Wyo., 1980.

▇ Banner has submitted competent evidence to establish that it is a bona fide purchaser within the definition and requirements as established by *Southwestern Petroleum* and *Winkler, supra*. No evidence to the contrary has been introduced by Geosearch. The burden of proof is on the protestant and Geosearch has failed to sustain its burden.

Upon a complete and total review of the record, this court finds that the decision of the IBLA is supported by substantial evidence and is not arbitrary, capricious or an abuse of discretion. This Court holds that Banner is indeed a bona fide purchaser and the decision of the IBLA is affirmed.

### Civil No. C80–258K

Civil action C80–258K involves nine leases, W–48405, W–58242, W–59583, W–64804, W–65160, W–67069, W–67106, W–67424 and W–67663.

Geosearch alleges in its complaint that the decisions of the IBLA relevant to each lease are arbitrary, capricious and an abuse of discretion.

▇ Geosearch further alleges that its vested property rights have been taken without due process of law in violation of the Fifth Amendment to the Constitution. Geosearch grounds this latter contention on the fact that the IBLA denied Geosearch a hearing before an administrative law judge (ALJ). A close reading of the regulations demonstrates that this contention is without merit. 43 C.F.R. § 4.415 states in pertinent part:

Either an appellant or an adverse party may, if he desires a hearing to present evidence on an issue of fact, request that the case be assigned to an administrative law judge for such a hearing. Such a request must be made in writing and filed with the Board within 30 days after the answer is due and a copy of the request should be served on the opposing party in the case. The allowance of a request for hearing is *within the descretion of the Board*, and the Board may, on its own motion, refer any case to an administrative law judge for a hearing on an issue of fact. (Emphasis added).

The regulation is very clear that the granting of a hearing before an ALJ by the IBLA is totally discretionary and, therefore, Geosearch's claim that it was denied due process is unfounded.

Geosearch purchased the rights of the second drawees to each of the nine leases. The BLM and the IBLA rendered decisions adverse to Geosearch on each of the nine leases. Each one of the leases has been assigned by the first drawee at least once and some have been assigned many times. All of the assignments have been properly submitted and subsequently approved by the BLM. Once again the standard of review as set out by the Administrative Procedure Act and the Tenth Circuit Court of Appeals is a determination of whether the IBLA decisions were arbitrary, capricious or an abuse of discretion. See, 5 U.S.C. § 706(2)(A) and *Ballard E. Spencer Trust, Inc. v. Morton,* supra.

The threshold question to be considered by this court is that of standing.

Under the regulations, a second drawee has 30 days in which to appeal after he is served with the decision from which he is appealing. A timely appeal must be filed within 30 days after the second drawee's DEC has been returned. 43 C.F.R. § 4.411. If an appeal is not filed within the required time, the appeal may be summarily dismissed. 43 C.F.R. § 4.402.

■ Predictability and certainty of title are mandatory to the entire oil and gas leasing system. If deadlines for filing appeals are not enacted and strictly enforced, disappointed second and third drawees could effectively destroy the entire system by appealing at anytime. Title to thousands of oil and gas leases could be clouded by protest proceedings. Such confusion would be clearly contrary to the expressed statutory intent of the Mineral Leasing Act. *Stewart Capital Corp. v. Andrus,* Civil No. C79–123K, D.C.Wyo., April 24, 1980; *Runnells v. Andrus,* 484 F.Supp. 1234 (D.C.Utah 1980).

■ In order to have standing, Geosearch must prove that it has an injury in fact that is likely to be redressed by a favorable decision of the court. *Citizens Concerned For Separation Of Church and State v. City and County Of Denver,* 628 F.2d 1289 (10th Cir. 1980); *Duke Power Co. v. Carolina Env. Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). See also, *Data Processing Service v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Even if Geosearch could demonstrate any irregularities in the issuance of the leases to the first drawees, and this Court does not so hold, the leases, if canceled, would not be reissued to Geosearch. Under the regulations, the canceled leases would be withdrawn, offered at a competitive bid or subjected to a new simultaneous drawing. See, 43 C.F.R. § 3112.1. Geosearch cannot demonstrate any injury in fact and, therefore, has no standing.

The following tabulation sets forth the nine leases in C80–258K along with certain relevant information:

| Lease No. | Effective Date | Date Geosearch Acquired Interest | Date Protest Filed | Date Second and Third Priority DEC's Returned |
|---|---|---|---|---|
| W-48405 | 1/01/75 | 8/24/79 | 10/09/79 | 1/01/75 |
| W-58242 | 4/01/77 | 9/07/79 | 10/08/79 | 10/04/79 |
| W-59583 | 8/01/77 | 7/ /79 | 10/11/79 | 10/10/79 and 10/12/79 |
| W-64804 | 10/18/78 | 6/18/79 | 10/08/79 | 6/18/79 |
| W-65160 | 12/01/78 | 6/20/79 | 10/09/79 | |
| W-67069 | 4/01/79 | 6/18/79 | 10/10/79 | 6/26/79 |
| W-67106 | 4/01/79 | 6/15/79 | 10/12/79 | 6/26/79 |
| W-67424 | 5/01/79 | 6/16/79 | 10/09/79 | 6/25/79 |
| W-67663 | 6/01/79 | 9/07/79 | 10/12/79 | 6/22/79 |

■ As noted earlier, a second drawee has 30 days in which to appeal the issuance of the lease to the first drawee upon the return of the DEC's. In six of the nine leases in this case, W–48405, W–64804, W–67069, W–67106, W–67424, and W–67663, a protest was not filed by the second drawee or by Geosearch within the 30 day period. As a matter of law, Geosearch has no standing to protest these six leases because any interest which might have been held by the second drawee or Geosearch expired at the end of the 30 day period. Without any interest in the leases, Geosearch cannot demonstrate any injury, economic or otherwise, which would be redressed by a favorable decision of this Court.

The standard of review equally applicable to all nine leases is simply stated in *Ballard E. Spencer Trust, Inc. v. Morton,* supra. Unless the decision of the IBLA is arbitrary, capricious or an abuse of discretion, the decision is to be affirmed by this Court. The Secretary's interpretation of regula-

tions promulgated by him is entitled to deference. *Ballard E. Spencer Trust, Inc. v. Morton*, supra; *Harvey v. Udall*, 384 F.2d 883 (10th Cir. 1967).

The BLM issued nine separate decisions regarding the leases in this case. The decisions dismissed Geosearch's protests, and in the case of lease W–65160 its private contest, on the grounds that Geosearch had no interest in the leases, that Geosearch could not file a private contest and finally that no violation of the regulations occurred.

The IBLA issued one decision, consolidating the nine BLM decisions. The decision upheld the BLM position in all nine cases. After determining that Geosearch indeed lacked standing, the IBLA went on to state:

> There is no indication in any of the records herein of any violation of the leasing regulations, which, if established, would disqualify the successful drawees. All nine files contain statements from the successful drawee attesting to the integrity of the application procedures followed and categorically denying the allegations of impropriety asserted in appellant's protests. Appellant's voluminous statement of reasons neglects this rather crucial point, choosing instead to argue the viability of the second drawee's offer and the denial of his constitutional rights. Absent a showing that the successful drawee should have been disqualified, that assignees were not bona fide purchasers, or that the leases were subject to cancellation, the second drawees offer need not be considered. *Geosearch, Inc.,* 41 IBLA 291 (1979); *Geosearch, Inc.,* 40 IBLA 267 (1979). Appellant has failed to meet his burden of proof of showing irregularities by competent evidence that the lease offers were improperly issued or that the regulations have been violated otherwise. Accordingly, we conclude that appellant has not demonstrated that the protests were not properly dismissed...

After a complete and thorough examination of the nine administrative files, this Court concurs with the IBLA analysis.

Geosearch attempts to support its allegations with innuendo and assertions and, as such, Geosearch fails to sustain its burden of proof. The evidence Geosearch offers to demonstrate the arbitrary and capricious nature of the IBLA is nebulous and totally without substance.

The BLM decisions also distinguished between a protest and a private contest and showed that Geosearch lacked standing to file either one. The distinction is really not material in light of this Court's earlier discussion that Geosearch lacks standing because it cannot demonstrate any economic injury. However, there is nothing in the record to indicate that the interpretation is incorrect and, as noted above, the Secretary's interpretations are to be given great weight by the Courts.

### Civil No. C80–259K

Geosearch brought action C80–259K seeking judicial review of three leases, W–47397, W–67684 and W–66042.

Geosearch lacks standing on all three leases. Lease W–47397 was issued October 1, 1974 and the DEC's of the second and third drawees were returned on the same date. On October 5, 1979, some 5 years later, Geosearch filed a protest. Lease W–67684 was issued on June 1, 1979 and the second and third drawees' DEC's were returned on that date. Geosearch filed its protest on October 8, 1979, some 4 months later. Lease W–66042 was issued July 2, 1979 and the second and third drawees' DEC's were returned at that time. Geosearch filed a protest on October 8, 1979, some 3 months later. Any interest which the second drawees or Geosearch might have had was completely extinguished 30 days after the DEC's were returned. The second drawee could not protest the issuance of the leases on October 5, 1979 and October 8, 1979, respectively, and neither can Geosearch. Due to Geosearch's failure to comply with the regulations, it has no standing to contest the decision of the IBLA.

The BLM and IBLA decisions acknowledged Geosearch's lack of standing and stated that no irregularities in the issuance of the leases were apparent. This Court concurs in the judgment of the IBLA and their decision is affirmed.

### Civil No. C80–292K

Geosearch filed C80–292K seeking relief on leases W–53309 and W–49929. Lease W–53309 was issued on February 1, 1976 and the second and third drawees' DEC's were returned on that date. Geosearch filed its protest on October 12, 1979, almost 4 years later. Lease W–49929 was issued on May 1, 1975 and the second and third drawees' DEC's were returned on that date. Geosearch filed its protest on October 5, 1979, some 4½ years later.

Once again Geosearch lacks standing to protest the issuance of these leases. The second drawee had 30 days to appeal the issuance of the lease. No action was taken by either the second drawee or by Geosearch. As a matter of law, any interest that either the second drawee or Geosearch might have had was permanently extinguished 30 days after the DEC's were returned.

Furthermore, the IBLA found that there was insufficient evidence to substantiate Geosearch's allegations of impropriety. This Court finds nothing in the administrative record to substantiate Geosearch's claims that the IBLA decision is arbitrary, capricious, or an abuse of discretion.

Throughout these cases, Geosearch has alleged violations of the regulations by the first drawees. Geosearch itself is in violation of the regulations. 43 C.F.R. § 3106.3–4, Transfer of Offer, requires that Geosearch file a proper application for approval of a transfer of an offer. As a result, Geosearch does not have an interest in the second drawn offer. In D. R. Weedon, Jr., et al., 51 IBLA 378, the Board analyzed Geosearch's lack of standing as follows:

BLM properly held that Geosearch presently has no cognizable interest in the second-drawn offer. Geosearch has never filed a proper application for approval of a transfer of any interest in the offer and lease (if issued) as described in 43 C.F.R. 3106.3–4. While the protest, filed on October 3, 1978, does contain a copy of a private agreement between it and the offerors, it is not on a proper form, does not contain the required fee or transferee's statement, and does not request approval of such a transfer. 43 C.F.R. 3106.2, 3106.3–4. In any event, BLM could not have approved such a request in October 1978 as Geosearch had not established its qualifications to hold a lease (43 C.F.R. 3106.1–2) or filed the required interest statement (43 C.F.R. 3106.1–4). See Newton Oil Co., A–30453 (Nov. 30, 1965).

Nothing in the record shows that Geosearch has subsequently submitted a proper application for approval of such an assignment. An assignment of whatever interest an oil and gas lease offeror may hold is ineffective until it is approved by BLM. See William G. Beanland, 21 IBLA 66 (1975); Amoco Production Co., 16 IBLA 215 (1974).

The Secretary's interpretation of the regulations is to be given full credit. Ballard E. Spencer Trust, Inc. v. Morton, supra.

Geosearch has never filed any applications seeking approval of the transfers of the offers from the second drawees to Geosearch in any of the leases involved in these four cases. As a result, Geosearch has no valid interest whatsoever in any of the fifteen leases involved in the current actions. As such, Geosearch lacks the standing to bring these actions because they have no valid interest in the second drawees' offers.

As the Court noted earlier, time limitations on protests, contests and appeals must be promulgated and strictly enforced. Otherwise the entire system would fail and hundreds of thousands of oil and gas leases would have clouds on their titles at the whim of disappointed second drawees.

This Memorandum Opinion constitutes the Findings of Fact and Conclusions of Law and additional findings are unneces-

848

sary. Order will be entered in conformity with this memorandum.