**AMERICAN CONTRACT DESIGNERS INCORPORATED, Plaintiff,**

v.

**CLIFFSIDE, INC., d/b/a Cliffside Motor Inn, Defendant.**

**No. 78 Civ. 1546 (JMC).**

United States District Court, S. D. New York.

Oct. 11, 1978.

---

8. Senate Report No. 798, 2 U.S.Code Cong. & Admin.News 1965, at 3737, 3738.

Feder, Kaszovitz & Weber, New York City (Murray L. Skala, Gabriel Kaszovitz, New York City, of counsel), for plaintiff.

Marshall, Bratter, Greene, Allison & Tucker, New York City (Richard L. Bond, Terri E. Simon, New York City, of counsel), for defendant.

## MEMORANDUM DECISION

CANNELLA, District Judge.

Defendant's motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, or, in the alternative, to transfer this action to the United States District Court for the Northern District of West Virginia, pursuant to 28 U.S.C. § 1404(a), is denied.

In deciding the instant motion, the Court has relied on the affidavits of the parties to establish jurisdictional facts. *See Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1284–86 (9th Cir. 1977); *Ghazoul v. International Management Services, Inc.,* 398 F.Supp. 307, 309 (S.D.N.Y. 1975). These are for the most part undisputed, but where there is a dispute the Court has set forth the respective contentions of the parties, mindful of the fact that it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *See, e. g., Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa,* 428 F.Supp. 1237 (S.D.N.Y. 1977); *Ghazoul, supra,* at 309.

## FACTS

Plaintiff American Contract Designers, Inc. ["ACD"] is a New York corporation engaged in the commercial interior design and furnishings business. It designs interiors for commercial clients such as hotels, motels and nursing homes, and often sells to them the furnishings, furniture and equipment specified in its design plans. Its principal place of business is in New York City. Defendant Cliffside, Inc. ["Cliffside"] is a West Virginia corporation engaged in the sole business of owning and operating the Cliffside Motor Inn ["the Inn"] at Harpers Ferry, West Virginia. Cliffside has no telephone listings, mailing address, bank accounts, or real property in New York State; nor is it licensed to do business in New York.

The first relevant contact between the parties appears to have occurred in December 1975, when an ACD representative visited Cliffside to offer ACD's services in connection with an addition planned for the Inn. Although the parties entered into no contractual relationship at the time, they continued to correspond by mail and telephone. During the course of one of these telephone conversations, ACD's president, Milton Reiner, learned that Cliffside needed financing for its planned addition, and suggested to Cliffside's officers that they contact Robert Goldman, a mortgage broker located in New York City, whom Reiner referred to as a personal friend. Cliffside's vice-president, William Gavin, then visited Goldman and, while in New York, indicated to one of ACD's salesmen that should Goldman arrange a mortgage loan, Cliffside would be favorably disposed to doing business with ACD. Goldman ultimately arranged the loan.[1]

During late July 1976, ACD sent representatives to the Inn to discuss proposals with Cliffside and to become familiar with the Harpers Ferry area so that they could develop designs to suit the milieu. On September 15, 1976, three representatives of

---

1. None of the defendants' moving papers refer to Gavin's visit.

Cliffside—its president, John Newcomer; his wife, June Newcomer, who according to defendant's affidavit acts as a co-manager of the Inn; and Gavin[2]—met with Reiner in Lancaster, Pennsylvania, at a motel for which ACD had designed the interior. It was then and there that John Newcomer and Reiner signed an agreement providing that ACD would design an interior for Cliffside's planned addition, in return for which Cliffside would give ACD an option of first refusal on the sale of all furniture, furnishings and equipment specified in the design plans.

Shortly thereafter, ACD invited the Newcomers to visit its showrooms in New York City, at least in part for the purpose of reviewing some of the work ACD had completed. On November 10, 1976, Mr. and Mrs. Newcomer arrived in New York City, where they had dinner and attended the theater as guests of ACD. The following day they visited ACD's showrooms and met with members of ACD's staff. The defendant refers to this meeting as "brief" and "largely social": "[W]e spent a short time in the showroom . . .. We merely were shown and asked our reactions to various fabric samples, photographs of furniture and color schemes, so that the ACD staff would have a general idea of our tastes as they worked out a decorating scheme for the Inn." Affidavit of John N. Newcomer, at 4 (filed April 13, 1978). The plaintiff, on the other hand, concedes that the Newcomers spent no more than five hours at the showroom, but characterizes that visit quite differently: "The Newcomers and we checked each chair, each bed, and every other selected item of furniture; each drapery, each bedspread and every other selected fabric; each selected carpet; every wall covering and each and every decorative item." Affidavit of Andrew Thompson, ACD Design Department Supervisor, at 3 (filed May 9, 1978).

On March 9, 1978, ACD commenced this action in the New York State Supreme Court, alleging that upon completing its design recommendations, it submitted to Cliffside a "package quotation" for all specified items of furniture, furnishings and equipment, and that Cliffside then wrongfully abrogated ACD's option of first refusal by securing from other furnishers bids not in accordance with the terms of its agreement with ACD. The defendant removed the case to this Court, pursuant to 28 U.S.C. § 1441(a), on the grounds of diversity of citizenship, 28 U.S.C. § 1332(a), and has now moved to dismiss the plaintiff's complaint for lack of in personam jurisdiction, or, in the alternative, to transfer the case to a more convenient forum.

## JURISDICTION

Jurisdiction over the person of the defendant in a federal diversity action cannot exceed that which could be lawfully exercised by a court of the state in which the federal court sits. Consequently, the assertion of personal jurisdiction in such a case must comport with the applicable state law as well as with federal due process guarantees. *See, e. g., Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir. 1963) (en banc).

Plaintiff herein does not assert that the defendant is or ever has been "doing business" in New York, but argues instead that the defendant is subject to "longarm" jurisdiction under New York CPLR § 302(a)(1), which provides as follows:

(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, . . . who in person or through an agent:

1. transacts any business within the state . . ..

The Court must therefore determine whether the activities of defendant's agents in New York amount to a "transaction of business," from which the plaintiff's claim has "arisen."

---

**2.** The affidavit of John Newcomer states that he and his wife June "run" the Inn and are "assisted" by Gavin. Affidavit of John N. Newcomer, at 1–2 (filed April 13, 1978).

The New York Court of Appeals has recently reaffirmed that even a single, brief visit to New York may amount to a "transaction of business" upon which jurisdiction can be based. *George H. Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). Furthermore, that the actual signing of a contract may have occurred outside New York does not preclude jurisdiction. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). The relevant inquiry is whether the defendant has performed "purposeful acts" in New York "in relation to the contract, albeit preliminary or subsequent to its execution." *Id.* at 457, 261 N.Y.S.2d at 18, 209 N.E.2d at 75; *see Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870 (2d Cir. 1975).

The reach of section 302(a)(1) does have its limits, however. *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967) (4–3 decision), held that jurisdiction could not be asserted over a defendant that had executed a contract with the plaintiff in New York, and that had, through an agent, subsequently visited the plaintiff at the plaintiff's New York place of business. Writing for a closely divided court, Judge Scileppi acknowledged the defendant's contacts with New York, but labeled them "infinitesimal." *Id.* at 382, 283 N.Y.S.2d at 37, 229 N.E.2d at 607. The contract that the parties had executed in New York had expired six or seven years before the defendant's visit, and had been superseded by renewal agreements executed in Illinois.[3] Moreover, the actual purpose of the visit was not closely related to the contract but was rather to help alleviate some friction that had arisen between the plaintiff and certain of the plaintiff's customers. Thus, as the New York Court of Appeals has recently indicated, *McKee* stands for the proposition

that a defendant's "casual visits" and "passing the time of day" with a plaintiff in New York will not serve as a basis for jurisdiction. *See George H. Reiner & Co. v. Schwartz, supra,* 41 N.Y.2d at 654, 394 N.Y. S.2d at 848, 363 N.E.2d at 555.

In this Court's opinion, the instant case is distinguishable from *McKee.* There were two visits to New York City by high-level officers of the defendant Cliffside, which, taken together, do amount to sufficiently "purposeful acts in relation to the contract," and not merely "casual visits." The first of these was William Gavin's meeting with a mortgage broker several months before the parties signed any agreement. Although at no time during this visit did Gavin engage in any negotiations with ACD, it seems that Gavin himself regarded this visit as having an important bearing on the likelihood of any future contractual relationship between ACD and Cliffside. The second visit was by the Newcomers to ACD's New York showrooms. Despite Cliffside's contention that this was "largely social," it is quite plain to the Court that the visit was substantially in furtherance of the contract signed by the parties on September 15: its primary, if not sole, purpose was to facilitate ACD's completion of the design plans for the addition to the Inn.

The Court therefore concludes that section 302(a)(1) of the New York CPLR permits the exercise of jurisdiction over the defendant in this case. The Court also concludes that such an exercise does not offend "traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and hence is not unconstitutional. The defendant's two visits to New York in furtherance of its own business ends constitute acts by which it "purposefully avail[ed] itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of [New York] laws." *See Han-*

---

**3.** The Court of Appeals indicated that the plaintiff had not conclusively established the contract's place of execution, but that the trial court had given it "the benefit of the doubt."

20 N.Y.2d at 379, 283 N.Y.S.2d at 36, 229 N.E.2d at 605–06. Apparently all of the contracts between the two parties were unwritten.

740

*son v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1957).

MOTION TO TRANSFER

█ Nothing in the moving papers indicates to the Court that, on balance, the inconvenience to the parties and witnesses would be significantly less, or the interests of justice significantly advanced, if this case were to be heard in Martinsburg, West Virginia, rather than in New York City. As Judge Brieant stated in *Mendelson v. Fleischmann,* 386 F.Supp. 436 (S.D.N.Y. 1973): "Plaintiff's original choice of forum is entitled to *some* weight." *Id.* at 439 (emphasis added). The Court therefore exercises its discretion under 28 U.S.C. § 1404(a) to deny defendant's motion to transfer.

SO ORDERED.