Paul PULLMAN, individually, and on behalf of other unsuccessful applicants similarly situated for oil and gas leases in Wyoming offered by the Bureau of Land Management under the Simultaneous Oil and Gas System, Plaintiff,

v.

Raymond CHORNEY, Joan Chorney, Chorney Oil Company, Seabrook Corporation, Lancaster Corporation, L. Stanley, Hazel Stanley, Cecil D. Andrus, Secretary of the Interior of the United States, Charles W. Duncan, Jr., Secretary of Energy of the United States and Maxwell T. Lieurance, Director of the Bureau of Land Management for the State of Wyoming, Defendants.

Civ. A. No. 80–C–1095.

United States District Court, D. Colorado.

March 2, 1981.

Lowey, Dannenberg & Knapp, P. C., New York City, Theodore S. Halaby, Halaby & Bahr, Denver, Colo., for plaintiffs.

James E. Nesland and John E. Evans, Ireland, Stapleton & Pryor, Denver, Colo., W. H. Brown, Brown, Drew, Apostolos, Massey & Sullivan, Casper, Wyo., Daniel R. Christopher, Asst. U. S. Atty., Denver, Colo., Richard W. Levi, Asst. Atty. Gen., Land & Natural Resources Division, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

This case raises some novel and complex issues regarding the ability of an unsuccessful applicant for a federal oil and gas lease to seek judicial invalidation of the lease after it has been granted to another person. The complaint, filed by the plaintiff on his own behalf and "on behalf of other unsuccessful applicants similarly situated for oil and gas leases in Wyoming offered by the Bureau of Land Management under the Simultaneous Oil and Gas System," seeks declaratory, injunctive, and monetary relief for alleged fraudulent practices in the simultaneous oil and gas leasing system (SOG system).

The defendants have filed motions to dismiss or alternatively for summary judgment, asserting *inter alia* that the plaintiff has failed to exhaust administrative remedies, that the complaint fails to state a claim upon which relief can be granted, that the plaintiff does not have standing to sue, and that even if the complaint does state an actionable claim, it is barred by the applicable statute of limitations.

### I. Statement of the Case.

#### A. Parties.

The complaint alleges that the plaintiff was a "qualified offeror and drawee" in connection with a lottery conducted by the Bureau of Land Management for a lease of certain lands under the SOG system, as that system was in effect on February 20, 1979. Although this allegation implies that the plaintiff was one of the three successful drawees under the system, as will be explained more fully below, there is no dispute that the plaintiff's application was *not* actually drawn.

There are two groups of defendants: (1) the "private defendants," who allegedly submitted multiple lease applications to increase the probability that their applications would be drawn; and (2) the "government defendants," who are the Secretaries of the Departments of Interior and Energy, and the Wyoming Director of the Bureau of Land Management, all allegedly persons responsible for conducting the SOG system.

#### B. Claims.

Although the complaint's class action allegations purport to encompass several leases, the primary focus of the complaint is on one oil and gas lease, Number W–67438, issued May 1, 1979. This lease was issued to defendant Hazel Stanley, and subsequently assigned to defendant Seabrook Corporation. The complaint further alleges that Seabrook Corporation is controlled by the defendants Chorney, and that Hazel Stanley's husband, L. Stanley, was a vice-

president of that corporation at times relevant to this case.

The plaintiff charges that the private defendants acquired Lease Number W–67438 by an illegal scheme involving multiple applications for oil and gas leases offered under the SOG system in Wyoming. The defendants allegedly used numerous "dummies" who agreed to file lease applications, and then assign any leases obtained to the defendants if their applications were drawn. Thus, the gist of the complaint is that the SOG drawings were rigged in favor of the private defendants.

The government defendants are joined in the case for allegedly "failing to adopt and implement appropriate regulations for leasing; permitting fraudulent bidding practices ... by the Chorneys and others in connection with the Wyoming leases; and in failing to take action, upon discovery of the frauds, to set aside the Leases and all assignments thereof, and to either reoffer the Leases through competitive bidding or other fair and equitable procedures, or to compel the Chorney interests to account to all *bona fide* unsuccessful drawees for the profits obtained" as a result of their fraud.

## C. *Relief Sought.*

The plaintiff prays for a judgment declaring that the private defendants' actions were fraudulent and that any leases obtained by these fraudulent practices are void. He further seeks to enjoin the Chorneys from assigning any lease interest fraudulently obtained. In addition, he asks for equitable relief requiring the Chorneys to hold the Wyoming lease interests "as trustees *ex maleficio*" for the benefit of the plaintiff and purported class members. He seeks an order requiring the government defendants to take appropriate steps "in accordance with applicable federal statutes and regulations to make effective any order or judgment of this Court affecting the title or ownership of the Wyoming Leases or interests therein." Finally, the plaintiff asks for a *pro rata* distribution to the class members of all benefits the Chorneys have received from their allegedly illegal activities.

## D. *The Simultaneous Oil and Gas Leasing System—Statutory and Regulatory Scheme.*

■ The Mineral Leasing Act, 30 U.S.C. sections 181, *et seq.*, authorizes the Secretary of the Interior to lease government lands with oil and gas producing potential. 30 U.S.C. sections 181, 226. If the Secretary determines that the land in question is in a "known geological structure," as that term is defined in the MLA, then the lease must be offered to the "highest responsible qualified bidder by competitive bidding." 30 U.S.C. section 226(b). If the lands to be leased are not within any known geological structure of a producing oil and gas field, then "the person first making application for the lease who is qualified to hold a lease under [the MLA] shall be entitled to a lease of such lands without competitive bidding." 30 U.S.C. section 226(c). A "qualified bidder" is a person who is a United States citizen and who does not have interests in other federal oil and gas leases in excess of certain acreage limitations. 30 U.S.C. sections 181, 184. The Secretary has the discretion to decide whether to lease lands or not, "but once he has decided to lease it is mandatory that he issue a lease to the first qualified applicant, if he is going to lease at all." *Southwestern Petroleum Corporation v. Udall*, 361 F.2d 650, 654 (10th Cir. 1966).

The simultaneous oil and gas leasing system is not established by the MLA itself. Rather, pursuant to the authority granted by 30 U.S.C. section 189, the Secretary promulgated regulations setting up the system. Prior to institution of the SOG system, land offices were frequently chaotic when numerous applicants competed to be the first to file upon termination or cancellation of a non-competitive lease, or when lands were otherwise first offered on a non-competitive basis.

The SOG system in effect at the times relevant to this case was established in regulations published at 43 C.F.R. section 3112. When lands became available for non-competitive leasing, the appropriate BLM office would post a notice to that effect, specifying a five-day period during which applica-

tions could be filed. A separate application was required for each parcel, and an offeror could submit only one application for each parcel. 43 C.F.R. section 3112.2–1(a)(1). All applications which would result in the applicant having a greater probability of obtaining a lease than any other applicant—*e. g.*, filings made on behalf of or in collusion with another party also filing an application—would be rejected. 43 C.F.R. 3112.5–2. Section 3112.5–2 also provided that if "a lease is issued on the basis of any such offer, action will be taken for the cancellation of all interests in said lease held by each person who acquired any interest therein as a result of collusive filing unless the rights of a bona fide purchaser . . . intervene . . . ."

All applications filed during the five-day period were then considered filed simultaneously, and the BLM would hold a drawing for each parcel to determine who would be deemed the "first" applicant. Three cards were drawn and marked according to their respective priorities in the drawing; all other applications were returned to the applicants with a notice stating "you were not successful in the drawing and your offer [to lease the land] is rejected."

The lease would then be tendered to the first applicant whose name was drawn. If that applicant was determined to be qualified, and the lease was in fact issued, the number 2 and 3 applications would be returned to the applicants.

If the first drawee did not accept the lease, or failed to qualify, the lease would next be offered to the second, and, if necessary, the third drawee. 43 C.F.R. section 3112.4–1. If none of the three drawees accepted, or if all were disqualified, the parcel in question would no longer be available through that particular drawing, and the Secretary would have to make a decision about what to do next. The parcel could be withdrawn, pursuant to the Secretary's authority; if the land had become part of a known geologic structure in the interim, it would have to be offered, if at all, on a competitive basis; or the parcel could be offered again under the non-competitive SOG system, by way of a new notice, application, and drawing proceeding.

An unsuccessful applicant was entitled, under the applicable regulations, to file a protest with the BLM office in the state in which the lease was offered, 43 C.F.R. section 5.450–2, and they could appeal to the Board of Land Appeals the decision to lease the parcel to another. 43 C.F.R. sections 4.410–411.[1] Judicial review of a final administrative decision would then be available pursuant to the Administrative Procedure Act, 5 U.S.C. sections 701, *et seq.* However, 30 U.S.C. section 226–2 provides that "[n]o action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter." For purposes of BLM matters such as those involved here, a decision of the Board of Land Appeals constitutes the "final decision of the Secretary." 43 C.F.R. section 4.1.

## II. *Analysis.*

### A. *Jurisdiction.*

██ Because the complaint in this case is unambiguously founded, *inter alia*, on the

---

1. Section 4.410 provides, in part, that "any party to a case who is adversely affected by a decision of an officer of the Bureau of Land Management or of an administrative law judge, shall have a right to appeal to the Board."

Section 4.411 then provides the procedure for appeals, including the requirement that the "notice of appeal must . . . be transmitted in time to be filed in the office, where it is required to be filed within 30 days after the person taking the appeal is served with the decision from which he is appealing."

Sections 4.450–1 and 4.450–2 provide the procedures for filing "private contests"—proceedings by any person "who claims title to or an interest in land adverse to any other person claiming title to or an interest in such land"—and "protests"—proceedings to challenge BLM actions when the elements of a "private contest" are not present.

Thus, a person aggrieved by the issuance of a lease to another could first file a private contest or a protest, and then could appeal an adverse decision on that action if the notice of appeal were filed within 30 days after the adverse decision.

federal statutory scheme in the MLA and the regulations promulgated pursuant to the MLA, it is clear and apparently uncontested that this Court has jurisdiction, under 28 U.S.C. section 1331, to determine whether the complaint states a claim under federal law upon which relief can be granted. *See Wheeldin v. Wheeler*, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Bivens v. Six Unknown Named Agents*, 409 F.2d 718 (2d Cir. 1969), *rev'd on other grounds*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

## B.  *Standing.*

■  The defendants have raised several grounds upon which they assert the right to dismissal, including failure to exhaust administrative remedies, failure to bring the action within the time prescribed by the applicable statute of limitations, and failure to state a claim upon which relief can be granted.  These motions have raised difficult questions, and the plaintiff has vigorously opposed dismissal.  Even assuming that the plaintiff could successfully avoid dismissal on the foregoing grounds, however—which this Court need not and does not decide—the plaintiff would not have standing to proceed with this lawsuit.

■  The reason that standing is the first issue the Court must address is that "[s]tanding to sue, like mootness and ripeness, '... has its constitutional origins in the "case or controversy" limitations of Article III which insures that courts exercise their power only in cases where true adversary context allows informed judicial resolution.'  *Wiley v. National Collegiate Athletic Association*, 612 F.2d 473, 475 (10th Cir. 1979)." *Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1294 (10th Cir. 1980).  If the plaintiff has no legal standing to raise the issues pleaded in the complaint, this Court cannot reach the merits of those issues.

■  It is unnecessary to repeat at length here the now-familiar principles of the standing doctrine as it has been developed in the courts.  *See Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d at 1295–1301.  In brief, the "essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.' "  *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978), *quoting Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).  "As refined by subsequent reformulation, this requirement of a 'personal stake' has come to be understood to require not only a 'distinct and palpable injury,' to the plaintiff, *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct.  *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977)." *Id.*

Plainly, because of the nature of the SOG leasing system and the nature of any "right" the plaintiff may have in connection with the issuance of oil and gas leases under that system, the plaintiff cannot meet these requirements.

Although the plaintiff asserts his claim in various terms, the basic interest to which he claims actual injury is the right to have the drawing for leases under the SOG system be conducted fairly.  Clearly, by alleging that the private defendants fraudulently submitted multiple applications, which illegally reduced the probability that the plaintiff's application would be drawn, the plaintiff has in a sense alleged that the interest he asserts has suffered actual injury.

Even assuming that the plaintiff has alleged a "distinct and palpable injury," however, this Court cannot perceive that the plaintiff has established the requisite connection between the claimed injury and the

challenged conduct, or, as that requirement has also been stated, "that the exercise of the Court's remedial powers would redress the claimed injuries." *Id.*, 438 U.S. at 74, 98 S.Ct. at 2630. *See also Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 43, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976).

As the summary of the SOG leasing system at the beginning of this opinion indicates, once the first three applications have been drawn with regard to any particular parcel being offered, the remaining applications are returned to the applicants. Even if none of the three drawees ultimately obtains a lease, the remaining applicants have *no chance* of leasing the parcel pursuant to that drawing. At best, the parcel may be reoffered in a subsequent drawing, but even that is a matter committed to the discretion of the Secretary.[2] Therefore, nothing this Court is empowered to do could redress the injury alleged by the plaintiff.

The Court is particularly persuaded by Judge Kerr's analysis in *Geosearch, Inc. v. Andrus*, 508 F.Supp. 839 (D.Wyo., Civil Action Numbers C80–205K, C80–258K, C80–259K and C80–292K, filed February 20, 1981). In that case, the Court held, *inter alia,* that *second drawees* or their assignees, could not establish standing to assert similar challenges to the issuance of leases to the first drawees, where the challenges were filed more than thirty days[3] after issuance of the leases. The Court stated that "any interest which the second drawees or [their assignees] might have had was completely extinguished 30 days after the [applications] were returned." (Slip Opinion at 847.) In the instant case, the plaintiff's standing is even more tenuous, since he was not even the second or third drawee, and thus would have had no chance of obtaining administrative assignment of the lease to him even if the first drawee's lease had been cancelled.[4]

The plaintiff places considerable reliance on *McKay v. Wahlenmaier*, 226 F.2d 35 (D.C.Cir.1955). Contrary to the plaintiff's assertion, however, that this case is inapposite. *McKay* did involve a challenge to the Secretary of the Interior's refusal to cancel a lease issued under the SOG system, where the plaintiff alleged that the person who had received the lease had been guilty of multiple filing. The plaintiff, who was the second drawee, sought cancellation of the first lease and issuance to him. In that case, however, the plaintiff had duly exhausted administrative remedies, apparently in a timely manner. There was no question raised regarding the plaintiff's standing to challenge the Secretary's action, for the plaintiff, as second drawee, had a definite interest in the subject parcel if the first lease were cancelled.[5] The sole question was whether the Secretary had erroneously refused to apply the regulations which required him to cancel the first lease if a timely administrative challenge were filed. Thus, the Court's decision ordering the Secretary to cancel the first lease was

---

2. The intangible nature of a lease applicant's interest in this type of situation is illustrated by comments of several courts in other contexts. *See, e. g., McTiernan v. Franklin*, 508 F.2d 885, 888 (10th Cir. 1975) ("Since McTiernan's oil and gas lease offer does not give him a vested property right, ... he has no standing to question title to the mineral rights."); *Hannifen v. Morton*, 444 F.2d 200, 203 (10th Cir. 1971) ("It has been held that an application for a federal oil lease is a hope or perhaps expectation rather than a vested property right."); *Rowe v. United States*, 464 F.Supp. 1060, 1074–75 (D.Alaska 1979), *rev'd in part on other grounds*, 633 F.2d 799 (9th Cir. 1980) (noting in dictum the lease applicants' "serious standing problem" because of their failure to establish a "cognizable property interest.").

3. The thirty-day period referred to was that established by regulation for filing challenges of that nature. *See,* fn. 1, *supra,* and accompanying text.

4. Although *Geosearch* involved judicial review of administrative action, the standing principles involved are essentially the same.

5. It is undisputed that a second drawee *is* entitled, by timely seeking administrative action, to seek agency cancellation of a lease issued to the first drawee. *See Boesche v. Udall*, 373 U.S. 472, 83 S.Ct. 1373, 10 L.Ed.2d 491 (1963); *Southwestern Petroleum Corporation v. Udall*, 361 F.2d 650 (10th Cir. 1966). That is an entirely different question, however, than that presented here.

made in a significantly different context, and does not control this case. Obviously, the standing of a second drawee who has timely challenged the issuance of the lease, *cf. Geosearch, Inc. v. Andrus,* is a totally different matter from that of an unsuccessful applicant who has no possibility of directly obtaining the lease even if the initial lease is cancelled.

Based on the foregoing analysis, the Court has determined that the plaintiff lacks standing to sue for the relief sought in this action. Accordingly, it is

ORDERED that the motions to dismiss filed by the defendants are granted, and that the complaint and this action shall be and hereby are dismissed, each party to bear his, her or its own costs.