**NAARTEX CONSULTING CORP.,**
**Plaintiff,**

v.

**James E. WATT, Secretary of Interior,**
**et al., Defendants.**

**Civ. A. No. 81–1540.**

United States District Court,
District of Columbia.

June 21, 1982.

As Amended July 16, 1982.

Daniel J. Piliero, II, Webster, Chamberlain & Bean, Washington, D. C., for Naartex Consulting Corp. and Russell Huff.

Thomas P. Humphrey, Washington, D. C., for J. D. Harrell.

Raymond N. Shibley, Washington, D. C., for Panhandle Western Gas Co.

Quarles & Brady, Peter C. Linzmeyer, Washington, D. C., for Fred L. Engle, d/b/a Resource Services Co.

Jerome C. Muys, John F. Shepherd, Washington, D. C., for Davis Oil Co.

B. Lee Ware, Houston, Tex., C. Michael Buxton, Washington, D. C., for Paul Messinger & Co., Southland Royalty Co., Michigan Wisconsin Pipe Line Co. and American Natural Resources Co.

Raymond G. Larroca, Washington, D. C., for Reading & Bates Petroleum Co.

Gerald S. Fish, Washington, D. C., for defendant Secretary of the Interior.

Gerry Levenberg, Washington, D. C., for Gen. American Oil Co. of Texas.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter is before the court on both governmental and private defendants' motions to dismiss and on the joint motion of plaintiff and Russell Huff to intervene as a party plaintiff and to file a second amended complaint adding Russell Huff as a party plaintiff. For the reasons expressed below, defendants' motions are granted and plaintiff's and Russell Huff's motion is denied.

### I. *Facts*

Under the Department of the Interior's simultaneous oil and gas leasing program, administered pursuant to the Mineral Leasing Act of 1920, 30 U.S.C. § 226(c), all offers to lease particular classes of parcels, are considered as having been simultaneously filed. Priority among the parcels is determined by a random drawing in which three applications are selected. The lease is awarded to the first qualified application of the three offers chosen. If all three applications are not qualified under DOI's regulations, no lease is issued and a new drawing is held.

In the case at bar, a drawing was held and lease number W–50394 was issued to the first of the three applications chosen at random, an application submitted by Norbert F. Albrecht. The lease was issued in March, 1974. Various assignments of drilling rights, reservations and transfers of royalty interests have occurred, which accounts for the large number of private defendants involved in this suit.

On January 25, 1979, Alvin Abrams, president of Geosearch, Inc., filed, in the Bureau of Land Management (BLM), a protest against the issuance of the lease to Albrecht. The basis for the protest was that Albrecht had a service agreement with Fred Engle, d/b/a Resource Service Company, a defendant in this suit, in violation of Interior Department regulations. In support of the protest, Abrams contended he was representing the entire class of persons who had filed unsuccessful offers for lease W–50394. On February 6, 1979, the BLM dismissed the protest on various grounds. Geosearch filed a notice of appeal and this appeal was dismissed by the Interior Board of Land Appeals (IBLA) on May 6, 1979, because no statement of reasons for the appeal had been filed.

On September 19, 1979, Abrams filed a second protest, this time as president of Naartex Consulting Corporation, plaintiff in the instant suit. This protest was based upon an agreement between Naartex and Russell Huff, another unsuccessful applicant for the lease in question. The agreement provided that in consideration for the transfer of Huff's interest in the lease to Naartex, Naartex would attempt to vindicate the "rights of all members of the class of persons who filed offers," through proceedings before the DOI and federal and state courts and would pay Huff 25% of the gross amount realized through its efforts.

On September 28, 1979, the BLM dismissed Naartex' protest. Naartex' appeal from this decision on October 29, 1979 was dismissed by the IBLA on June 9, 1980. On September 8, 1980, plaintiff petitioned the Board of Land Appeals to reconsider its initial decision dismissing plaintiff's appeal; the petition for reconsideration was denied by the IBLA on September 16, 1980. Finally, on December 12, 1980, plaintiff filed a petition with the Secretary of the Interior to review the decision of the IBLA; this petition was denied on April 6, 1981.

The instant suit was commenced on July 6, 1981, contending that the agency's denial of relief constituted an abuse of discretion, and seeking to have the agency's decisions set aside and the lease in question cancelled. Plaintiff also seeks to have the court find that the private defendants committed fraud in violation of the Mineral Leasing

Act and order that the defendants' ill-gotten gains be paid into a suspense account with the court or other appropriate party.

This action must be dismissed for a number of compelling reasons.

## II. *Discussion*

### A. *Jurisdiction and Venue*

■ The District of Columbia Code sets out a number of possible bases for the exercise of *in personam* jurisdiction over corporations and persons not having their principal place of business or residence in the District. Since there is no suggestion that there has been any tortious injury in the District, the only plausible basis for an exercise of jurisdiction over the private defendants in this case is that they transact business in the District. D.C.Code § 13–423(a)(4). For this basis to apply, plaintiff must demonstrate not only that the defendants have transacted business in the District, but also that claims pursued by plaintiff arose out of the business transacted here. D.C.Code § 13–423(b); *see generally Security Bank, N. A. v. Tauber*, 347 F.Supp. 511 (D.D.C.1972).

Most private defendants contend that they do not transact business here and that none of plaintiff's claims arise from any scattered contacts they may have had with the District in the past. A few of the private defendants acknowledge that they do have certain contacts with the District, but, by way of affidavits, these defendants have sworn that any contacts with the District are limited to involvements with the federal government. *See* Affidavit of American Natural Resources Company and Michigan Wisconsin Pipeline Company. Thus, these contacts would fall within the "government contacts" exception to the District of Columbia long-arm statute and would not qualify these private defendants for *in personam* jurisdiction. *See, e.g., Siam Kraft P. Co. Ltd. v. Parsons & Whittemore, Inc.*, 400 F.Supp. 810 (D.D.C. 1975), *aff'd*, 521 F.2d 324 (D.C.Cir.1975).

■ Plaintiff contends that it should be permitted to conduct discovery before the court concludes that it cannot exercise jurisdiction over the private defendants. This response is unpersuasive. First, plaintiff's complaint has not even *alleged* facts that would allow the court to conclude that there is personal jurisdiction over most of the private defendants. Even granting plaintiff's complaint the most liberal construction and furnishing it "the benefit of all inferences that can be derived from the facts alleged," *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979), the complaint does not withstand the motions to dismiss by most of the private defendants. *See* 4 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1068 at 250 (1969); *American Contract Designers, Inc. v. Cliffside, Inc.*, 458 F.Supp. 735, 737 (S.D.N.Y.1978); *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 309 (S.D.N.Y.1975).

In these circumstances, allowing plaintiff to conduct even limited discovery into the contacts of private defendants with the District would be unjustified. Plaintiff has not alleged the " 'threshold' jurisdiction sufficient to demonstrate the fairness of allowing the suit to continue." *American Contract Designers, Inc. v. International Cliffside, Inc., supra*, 458 F.Supp. at 735. Moreover, even as to those defendants for whom plaintiff's complaint alleges business contacts with the District, discovery cannot be authorized. As noted, these defendants, the Natural Resources Company and Michigan Wisconsin Pipeline Company, have, by way of affidavit, indicated that any contacts with the District were restricted to participation in governmental operations. Plaintiff has not challenged these contentions with specific facts in affidavits, nor has it explained in an affidavit why it needs to conduct discovery in order to justify its opposition to defendant's motion, as required by the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 56(e), (f).

Finally, even if there were some legitimacy to plaintiff's contention that it needs discovery to demonstrate personal jurisdiction, it appears that plaintiff has already been given "an adequate opportunity to obtain information through discovery."

*Vespe Contracting Company v. Anvan Corp.*, 433 F.Supp. 1226, 1233 n.9 (E.D.Pa. 1977); *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144, 151 (D.D.C.1976). Plaintiff filed its original complaint on July 6, 1981. The first of the private defendants received service in early July, 1981. Plaintiff sought no discovery at that time, either in the form of interrogatories or requests for production of documents. Nor did the plaintiff seek to depose any of the private defendants in July or August pursuant to Federal Rule of Civil Procedure 30(a). Further, the record reflects that the private defendants notified Naartex at least by September 4, 1981, that they were planning to file dispositive motions based, at least in part, on a lack of *in personam* jurisdiction. Despite the fact that *plaintiff* suggested the schedule for briefing of defendants' motions that was approved by the court on October 23, 1981, plaintiff made no attempt to initiate any discovery prior to the filing of the private defendants' motions to dismiss on November 23, 1981. On Naartex' motion, the court extended the time in which plaintiff could respond to the motion to dismiss until January 15, 1982; at this stage, plaintiff still made no effort to initiate discovery and did not suggest that it needed to conduct discovery in order to oppose defendants' motions. The court denied plaintiff's motion for an extension of time to respond to defendants' motions on February 25, 1982. Thus, the record indicates that for close to six months the plaintiff refrained from pursuing the discovery it now contends is so essential to effective opposition to defendants' motions; for approximately four of these months, plaintiff was on specific notice that defendants intended to raise the defense of lack of personal jurisdiction. Accordingly, plaintiff cannot genuinely contend that it did not have sufficient opportunity to conduct the "limited discovery" it now seeks, and the court is more than justified in dismissing all the private defendants from this suit.

■ Venue with respect to the claims against the private defendants is purportedly grounded in 28 U.S.C. § 1391(b). 28 U.S.C. § 1391(e), may provide a basis for venue over the claims against the Secretary of the Interior but does not furnish an independent basis for venue over the private litigants. *See Lamont v. Haig*, 590 F.2d 1124 (D.C.Cir.1978).

Section 1391(b) provides that a civil action not founded solely on diversity of citizenship (such as this one) may be brought only in the judicial district where all defendants reside "or in the judicial district where the claim arose." Obviously, all the defendants do not reside in this district. Thus, venue is only proper here if the "claim arose" in this jurisdiction, as plaintiff's complaint concedes. *See* Amended Complaint at ¶ 2.

The proper interpretation of the language "in which the claim arose" is somewhat unclear. The most recent discussion of the provision in this Circuit is that found in *Lamont v. Haig*, 590 F.2d 1124 (D.C.Cir. 1978). In that case, the court adopted a rather pliable, practically-oriented interpretation of the pertinent language. The court endorsed the view that section 1391(b) confers venue in a district where a "substantial portion of the acts, or omissions giving rise to the actions occurred, notwithstanding that venue might also lie in other districts. *Id.*, at 1134. The court stressed that venue considerations should be attuned as much as possible, to achieving the most efficient strategy for conduct of the lawsuit; the district court must engage in a "commonsense appraisal" of the implications of pertinent events for accessibility to witnesses and records. *Id.*, at 1134; *see also Florida Nursing Home Association v. Page*, 616 F.2d 1355, 1361 (5th Cir. 1980).

Subsequent to *Lamont*, the Supreme Court has apparently adopted a more restrictive view of the scope of section 1391(b). In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Court declined to hold that there can only be one district where a claim "arose," but indicated that only in quite unusual situations will there be more than one district which can be considered the locus of the claim. *Id.*, 99

S.Ct. at 2718. In the rare circumstances where there are two districts of "approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence and the convenience of the defendant," the plaintiff may choose either district. *Id.*

Thus, while *Leroy* is a rather opaque opinion, it does appear to authorize quite a different approach than that enunciated in *Lamont.* Instead of allowing the plaintiff to select any district in which relevant actions "were not insubstantial," *Lamont v. Haig, supra,* at 1134 n.62, *Leroy* provides that venue is proper only in the district where the most substantial actions occurred; only if this determination is unclear can a plaintiff choose between forums. Fortunately, this court is not required to resolve the discrepancies between *Lamont* and *Leroy* in order to conclude that venue does not properly reside in this jurisdiction with respect to the private defendants. Virtually all of the relevant events that underlie plaintiff's complaint occurred in Wyoming, including the filing of offers for the lease, the drawing of offers for the lease, the issuance of the lease and the approval of subsequent assignments by the Wyoming State Office of the BLM. Moreover, every agency action except one emanated from organs of the Department of Interior located outside of the District. The only pertinent decision occurring in Washington was the decision of the Secretary declining to assume jurisdiction over plaintiff's administrative protest. *See* Complaint at ¶ 55–56. Finally, while resolution of this case may be restricted to the administrative record, if the court looks beyond the administrative record for any reason, witnesses and evidence will almost certainly be located outside the District, most probably in Wyoming.

Clearly then, the most substantial actions material to this case took place in Wyoming. It is difficult to conceive of Washington as a district of "approximately equal plausibility," in *Leroy's* terms. Even applying the less rigorous standard propounded in *Lamont,* Washington is a district where relevant actions were "insubstantial" ac-

cording to any reasonable analysis. As a result, application of either of the arguably relevant standards for ascertaining where a claim "arose" reveals that venue does not exist in the District with regard to the private defendants.

■ Because personal jurisdiction and venue are lacking in the District, the private defendants argue that this action should be dismissed in its entirety for failure to join indispensable parties. This contention has substantial merit. The private defendants are certainly "persons to be joined if feasible" under Rule 19(a) of the Federal Rules of Civil Procedure. Since all of the private defendants have in the past held or presently own an interest in lease ¶–50394, they are persons who "claim an interest relating to the subject of the action" which may, as a practical matter, be impeded or impaired if suit proceeds in their absence. *See McKenna v. Udall,* 418 F.2d 1171 (D.C.Cir.1969).

Because the private defendants are parties that should be joined, the court must consider whether the infeasibility of joining them requires dismissal of the action. Rule 19(b) sets out the relevant factors in such a determination as: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by the shaping of relief, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. As the preceding discussion suggests, continuation of this suit in the absence of some or all of the private defendants would be likely to be significantly prejudicial to their interests. The suit seeks cancellation of the lease and the disgorgement of all allegedly fraudulently obtained profits. Such relief, if awarded by the court, would adversely impact upon the private defendants contesting personal jurisdiction and venue in the District.

Plaintiff's principal response to this line of reasoning is that, in accordance with the

second factor enumerated in Rule 19(b), the court could shape relief in such a way that the interests of particular defendants will not be materially damaged; specifically, Naartex suggests, the court could tailor its order so that only those interests of defendants still in the suit will be cancelled and only these defendants will be deprived of their fraudulently obtained profits. This response does not assist plaintiff, however, because it is clear that such piecemeal relief would not allow the court to render an "adequate" judgment, the third factor delineated in Rule 19(b). Since it is likely that most, if not all, of the private defendants must be dismissed from this suit on the basis of lack of venue or personal jurisdiction, any final judgment directed solely at the private defendants remaining in the suit or the government will simply not be meaningful. The fact that the majority (at least) of private parties holding an interest in the lease could not have their rights adjudicated would deprive any final judgment issued by this court of real significance.

The final factor mentioned in Rule 19(b) is whether plaintiff would have an adequate remedy if the action is dismissed. It is evident that such a remedy exists in this case. Suit could easily proceed in federal court in Wyoming. The private defendants have conceded that venue and personal jurisdiction are proper in that jurisdiction. In fact, as the previous discussion reveals, Wyoming would unquestionably be a superior forum for prosecution of this suit. A trial in Wyoming would be far more convenient for parties and witnesses. Wyoming federal courts have litigated a substantial number of suits virtually identical to the present one and are intimately familiar with the complex regulatory procedures and requirements that underlie plaintiff's claims. Thus, the court concludes that various private parties for whom joinder is infeasible are indispensable to the further conduct of this action. Suit cannot proceed "among the parties" remaining after these private defendants are dismissed from the suit. Fed.R.Civ.P. 19(b).

B. *Private Right of Action Under Mineral Leasing Act*

■ Plaintiff concedes that its action against the private defendants assumes the existence of an implied private right of action in the Mineral Leasing Act of 1920. *See* Reply in Support of Joint Motion for Russell Huff to Intervene or Be Joined as a Party Plaintiff at 2 (defendants "will not be required under the Act to disgorge these illegal proceeds unless the court recognizes a private right of action under the Act and enters a judgment based on common law fraud"). An analysis of the Mineral Leasing Act and its underlying purposes, however, reveals that Congress did not intend to create a private right of action to police against transgressions of the Act by private parties.

The Mineral Leasing Act does not expressly vest in any person besides the Attorney General the right to bring suit to enforce the Act's provisions. A number of recent Supreme Court cases have clarified that the essential question to be answered in determining whether a private remedy is implicit in a statute is whether "Congress *intended* to create the remedy asserted." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (Emphasis added); *see California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) (the "ultimate issue is whether Congress intended to create a private right of action"); *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 763, 101 S.Ct. 1451, 1458, 67 L.Ed.2d 662 (1981); *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 566, 568, 99 S.Ct. 2479, 2484, 2485, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). The Court has shifted away from the focus in earlier cases, *see, e.g., J. I. Case v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), upon the desirability of implying the private right of action in order to effectuate the purposes of a given statute. *California v. Sierra Club*, 451 U.S. at 297, 101 S.Ct. at 1781 (the courts "will not engraft a remedy on a statute, no matter

how salutary, that Congress did not intend to provide"); *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* 444 U.S. at 15, 100 S.Ct. at 245.

■ In determining whether Congress intended to create a private right of action, it is appropriate to first scrutinize the language of the statute itself. *See Touche Ross & Co., supra,* 442 U.S. at 568, 99 S.Ct. at 2485; *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1976); *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1976). There is nothing on the face of the Mineral Leasing Act which suggests that private parties should be permitted to enforce the Act's directives. In fact, an altogether contrary conclusion must be drawn from the language of the statute. Section 27 of the Act provides that if any interest in a lease is owned or controlled "in violation of any of the provisions of this chapter" the lease may be cancelled "in any appropriate proceeding instituted by the Attorney General." 30 U.S.C. § 184(h)(1). Furthermore, the Act is replete with references to oversight responsibilities and administrative obligations vested solely in the Attorney General or the Secretary of the Interior. *See generally* 30 U.S.C. § 188(b) (providing for administrative cancellation of lease by the Secretary); 30 U.S.C. § 226(j) (authorizing Secretary to approve development contracts with leasees). It is an elementary principle of statutory construction that where a statute "limits a thing to be done in a particular mode, it includes the negative of any other mode." *Botany Mills v. United States,* 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929). When applied to the question of legislative intent to create a private right of action, this general axiom suggests that a "statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica, supra,* 444 U.S. at 19, 100 S.Ct. at 247. Therefore, the language of the Mineral Leasing Act indicates Congressional intent not to provide for private rights of action.

The legislative history of the statute is similarly unsupportive of any contention that Congress desired that private suits for damages supplement cancellation actions by the Attorney General. Naartex offers not one shred of legislative history implying intent on the part of Congress to create a private right of action. Rather, plaintiff merely explains how a private remedy might be consistent with the underlying policies of the Mineral Leasing Act. While an independent appraisal of the value of a private cause of action may at one time have been sufficient to create such an action, *see J. I. Case v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1965), the Supreme Court has recently stressed that, in the absence of any indicia of Congressional intent, courts are precluded from engaging in an autonomous assessment of the desirability of private enforcement. *See California v. Sierra, supra,* 451 U.S. at 293, 101 S.Ct. at 1779. Since plaintiff can point to neither statutory language nor legislative history hinting at an intention to introduce private causes of action in the Mineral Leasing Act, the court can only conclude that no such action exists.

## C. *The Anti-Assignment Laws*

■ The preceding discussion reveals that there are fatal defects in plaintiff's attempt to sue the private defendants, at least in this jurisdiction. Such defects are also present with regard to plaintiff's effort to secure relief from the Secretary of the Interior. Most notably, Naartex' suit against the government appears to be a classic violation of the federal anti-assignment laws. 31 U.S.C. § 203 provides that:

All transfers and assignments made of any claim upon the United States ... shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim. . . .

Similarly, 41 U.S.C. § 15 states that:

No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given

to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned.

It is undisputed that the government never authorized the transfer of Huff's "interest" in Lease 50394 to Naartex.[1] Thus, it would appear that the anti-assignment provisions apply to the instant suit. The contract between Huff and Naartex assigns to Naartex the right to assert any claims Huff may have to the parcel in question, in exchange for a percentage of the gross recovery. Moreover, to the extent Naartex claims it has any entitlement to Lease 50395, or to secure cancellation of the lease, it is, in essence, contending that it derived a contractual right against the government from Huff. *See Standard Oil Co. of California v. Hickel,* 317 F.Supp. 1192, 1197 (D.Alaska 1970), *aff'd,* 450 F.2d 493 (9th Cir. 1971). Finally, as the government points out, the plain language of the anti-assignment laws comprehends claims to public property, such as an oil and gas lease, as well as claims to money. *See generally United States v. Gillis,* 95 U.S. 407, 413, 24 L.Ed. 503 (1877).

Plaintiff's response to the government's anti-assignment argument is twofold. First, plaintiff contends that the Huff-Naartex agreement implicates none of the evils which the anti-assignment provisions are directed at. This response is without significance. As noted above, the agreement falls plainly within the wording of the anti-assignment laws. This court cannot ignore a clear statutory directive because it feels that the problems Congress had in mind will not result from a particular contractual relationship. In addition, the agreement does engender the precise evils that motivated the anti-assignment provisions. One obvious purpose of these provisions is to prevent persons with the means

and disposition from buying up claims against the government and thereby proliferating suits against the government. *See, e.g., United States v. Shannon,* 342 U.S. 288, 72 S.Ct. 281, 96 L.Ed. 321 (1952); *Scanwell Laboratories, Inc. v. Thomas,* 521 F.2d 941, 944-45 n.3 (D.C.Cir.1975), *cert. denied,* 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1975). The agreement between Huff and Naartex is a perfect example of a professional entity buying up interests of unsuccessful individual bidders less able to prosecute a suit against the government. The fact that such an agreement will result in proliferation of suits against the government can be no more evident than in the circumstances of this case. As noted, Naartex and Mr. Huff have moved to join Mr. Huff as a party plaintiff. This obviously suggests that Mr. Huff has an independent right to proceed against the government, despite the transfer of his interest to Naartex. A more blatant example of suit proliferation is hard to imagine.

Naartex' second argument is that even if the agreement between Huff and Naartex violates the anti-assignment laws, the proper judicial remedy is not to dismiss the suit but to join Huff as the proper party plaintiff. Essentially, Naartex is contending that Huff should now be permitted to replace Naartex as the actual plaintiff at this stage of the proceedings. Naartex' and Huff's effort to salvage this suit cannot be permitted. First, it is the general rule that "intervention will not be permitted to breathe life into a 'nonexistent' lawsuit." *McClune v. Shamah,* 593 F.2d 482 (3rd Cir. 1979). A motion for intervention under Rule 24 is not ordinarily a proper device "to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate". *Id.; Interstate*

---

1. In fact, Naartex has never *filed* an application for approval of a transfer of any interest in the offer and lease, as it was required to do by 43 C.F.R. §§ 3106.3-4. Furthermore, even if Naartex had filed such an application, the BLM could not have approved the transfer because Naartex never complied with controlling regulations by filing a statement of its qualifications to hold a lease, 43 C.F.R. § 3106.1-2, or the

required interest statement. 43 C.F.R. §. 3106.-1-4. *See Geosearch, Inc. v. Andrus,* 508 F.Supp. 839, 847 (D.Wyo.1981).

This, of course, indicates that regardless of the applicability of the anti-assignment laws to the transfer in question, Naartex has no standing to prosecute this suit because it has no valid interest in the lease or the offer. *Id.*

*Commerce Commission v. Southern Railway Co.*, 380 F.Supp. 386, 394 (M.D.Ga.1974), *affirmed in relevant part*, 543 F.2d 534 (5th Cir. 1976) (authority to bring a suit cannot be "bestowed by intervenors on an original plaintiff"). The attempt to add Huff as a party plaintiff represents an obvious effort to revitalize a suit which Naartex would otherwise have no basis for litigating due to the operation of the anti-assignment laws.

■ Second, the court's discretionary authority to allow an intervenor to take control of a case should only be exercised when "the intervenor has a separate and independent basis for jurisdiction." *Fuller v. Volk*, 351 F.2d 323, 329 (3rd Cir. 1965). Huff lacks such an independent basis for jurisdiction because he did not appeal from the rejection of his offer to lease. Under DOI regulations, one adversely affected by a decision of the BLM can appeal to the IBLA, but such an appeal "is required to be filed within thirty days after the person taking the appeal is served with the decision from which he is appealing." 43 C.F.R. § 4.411 (1979). Huff received notice that his offer had been rejected when his offer was returned in June, 1975. Thereafter, he *never* appealed the decision denying his bid, instead transferring his interests to Naartex. The IBLA has held that the requirement for an appeal within 30 days is "mandatory and jurisdictional." *Ilean Landis*, 49 IBLA 59 (1980). Thus, even if Naartex could offer some reason why *its* protest and petition for reconsideration should allow it to file suit at this time, Huff has no conceivable explanation for ignoring the 30-day appeal limit. Similarly, an independent action by Huff appears to be clearly barred by the applicable statute of limitations. Section 226–2 of the Mineral Leasing Act provides that "[n]o action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter." 30 U.S.C. § 226–2 (1976). Again, Naartex may have some plausible claim that the ninety-day statute of limitations did not begin to run until the Secretary of the Interior made the

final decision not to intercede on Naartex' behalf but Huff has no rational basis for contending that the ninety-day statute of limitations with respect to his interest did not expire long ago. Thus, Huff lacks an independent basis for jurisdiction that would make him eligible to take command of this lawsuit. As a result, the potential intervention of Huff as a party plaintiff does not cure the basic flaws in Naartex' claim against the government.

### D. *Standing*

■ As a final threshold matter, the court believes that neither Naartex nor Huff has standing to prosecute this action. As noted, Naartex never filed an application for approval of a transfer of any interest in the offer and lease, as it was required to by 43 C.F.R. §§ 3106.3–4. Thus, Naartex does not even have a colorable claim to the lease or offer in question. *See Geosearch, Inc. v. Andrus*, 508 F.Supp. 839, 847 (D.Wyo.1981). With respect to Huff, it is uncontroverted that he did not file an appeal from the issuance of the lease within thirty days, as is required by 43 C.F.R. § 4.411, and, in fact, *never* administratively challenged the rejection of his offer. Accordingly, any interest Huff may have had in the lease that could have been sufficient to give him standing has been extinguished.

Moreover, it appears that Naartex and Huff have not demonstrated any injury that could be redressed by a favorable decision of the court. *Duke Power Co. v. Carolina Env. Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289 (10th Cir. 1980). The main relief sought by Naartex is cancellation of the lease and disgorgement of the funds fraudulently earned. It is doubtful that this court can order cancellation of the lease in question. Lease W–50394 cannot be cancelled administratively because it is a currently-producing oil and gas lease. *See* 30 U.S.C. § 188(b). Further, the Mineral Leasing Act expressly vests in the Attorney General complete discretion to initiate can-

cellation proceedings in federal court. 30 U.S.C. § 184(h)(1).

In addition, even if the court could order cancellation of the lease in question, this could not tangibly benefit Naartex or Huff. Since Huff was not the second or third bidder chosen, but was in the general class of unsuccessful bidders, the lease cannot be reissued to Huff or Naartex. 43 C.F.R. § 3112.1. The only possible consequences of lease cancellation are that the lease would be withdrawn, offered at a competitive bid or made available for a new simultaneous draw. 43 C.F.R. § 3112.1. *See Geosearch, Inc. v. Andrus, supra,* 508 F.Supp. at 845. None of these exigencies would extend any concrete benefit to plaintiff or increase in any measurable way the likelihood that the lease would ultimately be granted to Naartex or Huff. It is evident, then, that the present and prospective plaintiffs, unable to explain how any actual injury they have suffered can be remedied by this court, lack standing to prosecute this action. *See Pullman v. Chorney,* 509 F.Supp. 162 (D.Colo.1981).

### III. *Joint Motion to Join Huff as a Party Plaintiff and Amend the Complaint*

 The sole purpose of plaintiff's effort to bring Huff into this lawsuit is to avoid dismissal on the grounds of violation of the anti-assignment provisions. As discussed above, *see* pp. 1204–1205, *infra,* Huff's application to intervene in this suit and thereby take over its prosecution is defective on a number of grounds. For comparable reasons, Naartex' motion to amend its complaint to include Huff as a party plaintiff also lacks merit. Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend "shall be given freely when justice so requires." The Supreme Court has indicated that two factors relevant to the determination of whether leave to amend should be granted are whether there has been "undue delay, bad

faith, or dilatory motive" on the part of the movant and whether the amendment would be "futile." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Both of these factors counsel strongly in favor of denying the motion to amend. Huff has, presumably, been aware of this action since its inception and Naartex has obviously been familiar with Huff's interest in the suit. Despite this fact, Huff made no effort to intervene and Naartex made no effort to amend its complaint to include Huff until defendants had prepared extensive dispositive motions.[2] There is no explanation for this delay beyond that which is apparent on the record; plaintiff seeks to add Huff to this suit only in order to remove a basic threshold deficiency in Naartex' own suit.

Independently, there are valid grounds for denying the motion to amend because the amendment would be utterly futile. Even if Huff's addition to the suit could resolve the anti-assignment objection of the government, it would do nothing to cure the other problems associated with this lawsuit. Specifically, adding Huff to the suit would not cure the lack of personal jurisdiction or venue over the private defendants or the absence of a private cause of action under the Mineral Leasing Act. The suit would still be subject to dismissal, regardless of Huff's participation.

### IV. *Conclusion*

This suit suffers from a number of flaws with respect to both the claims against the private defendants and the claims directed against the government. The court must grant defendants' motions to dismiss and deny the joint motion to intervene and amend the complaint.

---

**2.** This reasoning, of course, also indicates that Huff's motion to intervene was not "timely" made, a prerequisite to intervention under Rule 24(a) of the Federal Rules of Civil Procedure. If Huff felt that he had a significant interest to

protect in this suit, he presumably would not have waited until the *last day* Naartex was given to respond to the defendants' dispositive motions.